# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT EMMA, Custodian, IRA, DTD 7/10/97, )<br><br>   Plaintiff, )<br><br>vs. )<br><br>RS INVESTMENT MANAGEMENT, L.P.; PFPC DISTRIBUTORS, INC.; G. RANDALL HECHT; LEONARD B. AUERBACH; JEROME S. CONTRO; JOHN W. GLYNN, JR.; and MICHAEL McCAFFERY, )<br><br>   Defendants, and )<br><br>RS EMERGING GROWTH FUND, )<br><br>   Nominal Defendant. ) | Case No. 04-cv-12106-NMG |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT BY DEFENDANTS RS INVESTMENT MANAGEMENT, L.P.; G. RANDALL HECHT; LEONARD B. AUERBACH; JEROME S. CONTRO; JOHN W. GLYNN, JR.; and MICHAEL McCAFFERY**

# TABLE OF CONTENTS

**Page**

BACKGROUND ...................................................................................................1

ARGUMENT.......................................................................................................2

I.  The Applicable Statutes of Limitations Bar All of Plaintiff's Claims....................2

   A.  Section 36(a) and 36(b) Claims Each Have a One-Year Statute of Limitations .............................................................................................2

   B.  A Three-Year Statute of Limitations Governs Plaintiff's Claim for Breach of Fiduciary Duty Under Massachusetts Law ...............................4

   C.  The "Continuing Wrong" Theory Will Not Salvage Plaintiff's Untimely Claims ...............................................................................5

II.  Plaintiff Failed to Make Any Pre-Suit Demand on the RS Board of Trustees .........................................................................................7

   A.  Derivative Claims Under Section 36(a) and Massachusetts Fiduciary Duty Law Require a Pre-Suit Demand on the RS Board of Directors ..............................................................................7

   B.  Plaintiff's "Futility" Allegations Do Nothing to Excuse Demand ............9

      1.  Plaintiff's Allegation That Demand Would Be "Futile" is Irrelevant Because Massachusetts Recently Abolished the "Demand Futility" Exception to Demand ......................................9

      2.  Plaintiff Asserts a Single Ground to Establish "Demand Futility".........................................................................10

      3.  Plaintiff's Demand Futility Allegations Must Overcome a Strong Presumption That "Independent Directors" Under the Investment Company Act are Indeed Independent .................12

      4.  Mere Approval of the Transactions at Issue Does Not Make the Trustees "Interested" for Demand Futility Purposes ..............13

      5.  There is Little or No Prospect – Much Less a "Significant Prospect" – That the RS Trustees Will Be Adjudged Liable Under Section 36(a) and Massachusetts Law...............................14

# TABLE OF CONTENTS
(continued)

Page

III.   Plaintiff Fails to Plead Facts Stating a Claim Under Section 36(a), Section
       36(b), or Massachusetts State Law ........................................................................17

       A.     Plaintiff Cannot State a Claim Under Section 36(a)................................17

              1.     There is No Private Right of Action Under Section 36(a) of
                     the Investment Company Act .........................................................17
              2.     Plaintiff Cannot Bring a Section 36(a) Claim Based on
                     Excessive Fees ...............................................................................20
              3.     Plaintiff Pleads No Facts Suggesting Personal Misconduct
                     By the Trustees ...............................................................................20

       B.     Plaintiff Cannot State a Section 36(b) Claim Against RS
              Investments ...............................................................................................21

              1.     The Fund is Not Closed to New Investors and, in Any
                     Event, 12b-1 Fees Have Declined Significantly Since the
                     So-Called "Closure" .......................................................................21
              2.     Plaintiff's "Excessive 12b-1 Fee" Allegations Are Deficient
                     Because They Do Not Address the Relationship Between
                     the Fund's 12b-1 Expenses and the Corresponding
                     Distribution Services Rendered ......................................................23
              3.     The Disinterested Trustees' Pure Business Judgment to
                     Continue the 12b-1 Fees is Fatal to Plaintiff's Section 36(b)
                     Claim................................................................................................24

       C.     Plaintiff's Massachusetts State Claim for Breach of Fiduciary Duty
              Fails as a Matter of Law ............................................................................25

              1.     Plaintiff's Massachusetts State Claim Sounds in Waste and
                     Plaintiff Falls Far Short of Pleading a Waste Claim.....................25
              2.     Plaintiff Fails to Allege Facts Implicating the Duties of
                     Care and Loyalty.............................................................................25
              3.     Putting Aside the Pleading Deficiencies of Plaintiff's
                     Massachusetts State Law Claim, the Claim Should Be
                     Dismissed for Lack of Supplemental Jurisdiction.........................27

IV.    Plaintiff Does Not Comply with the Verification and Stock Ownership
       Requirements of Rule 23.1 .................................................................................27

CONCLUSION...............................................................................................................29

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abeloff v. Barth,*
119 F.R.D. 332 (D. Mass. 1988) ................................................................. 27

*Abrams v. Koether,*
766 F. Supp. 237 (D.N.J. 1991) ................................................................. 28

*Acampora v. Birkland,*
220 F. Supp. 527 (D. Colo. 1963) ............................................................. 25

*Aiello v. Aiello,*
No. 983289, 2000 WL 281662 (Mass. Super. Ct. Jan. 19, 2000) .................... 4

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ........................................................................ 17, 18, 19

*Allied Freightways, Inc. v. Cholfin,*
91 N.E.2d 765 (Mass. 1950) ...................................................................... 26

*Alves v. Harvard Pilgrim Health Care, Inc.,*
204 F. Supp. 2d 198 (D. Mass. 2002), *aff'd*, 316 F.3d 290 (1st Cir. 2003) .................... 26

*Bartlett v. New York,*
109 N.E. 452 (Mass. 1915) ...................................................................... 8, 10

*Beaudette v. Sentry Ins. A Mut. Co.,*
94 F. Supp. 2d 77 (D. Mass. 1999) .............................................................. 6

*Black v. Parker Mfg. Co.,*
106 N.E.2d 544 (Mass. 1952) .................................................................... 26

*Blatt v. Dean Witter Reynolds Intercapital, Inc.,*
566 F. Supp. 1294 (S.D.N.Y. 1983), *aff'd*, 732 F.2d 304 (2d Cir. 1984) ........................ 3

*Blatt v. Merrill Lynch,*
916 F. Supp. 1343 (D.N.J. 1996) ................................................................. 5

*Bonano v. E. Caribbean Airline Corp.,*
365 F.3d 81 (1st Cir. 2004) ................................................................... 18, 19

*Brown v. Hart,*
96 F.R.D. 64 (N.D. Ill. 1982) ..................................................................... 28

*Chamberlain v. Aberdeen*, 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005) ............................. 18, 19

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Cohen v. Fund Asset Mgmt., Inc.,*
No. 79 Civ. 2512, 1980 WL 1488 (S.D.N.Y. Mar. 31, 1980) ................................. 20, 22

*Cort v. Ash,*
422 U.S. 66 (1975).......................................................................................... 19

*Crowell & Thurlow S. S. Co. v. Crowell,*
182 N.E. 569 (Mass. 1932) .............................................................................. 26

*Crowley v. Polar Corp.,*
No. 932088, 1994 WL 879357 (Mass. Super. Ct. Oct. 17, 1994) .................................. 4

*Daily Income, Inc. v. Fox,*
464 U.S. 523 (1984).................................................................................. 12, 25

*Deisenroth v. Numonics Corp.,*
997 F. Supp. 153 (D. Mass. 1998) ...................................................................... 6

*Demoulas v. Demoulas Super Mkts, Inc.,*
677 N.E.2d 159 (Mass. 1997) ............................................................................ 4

*Demoulas v. Demoulas Super Mkts., Inc.,*
No. 033741BLS, 2003 WL 22285305 (Mass. Super. Ct. Sep. 22, 2003)...................... 16

*Drepanos v. Malouf,*
No. 003921, 2003 WL 21500590 (Mass. Super. Ct. June 2, 2003)............................... 27

*Fogel v. Chestnutt,*
533 F.2d 731 (2d Cir. 1975) ............................................................................ 17

*Fogel v. Chestnutt,*
668 F.2d 100 (2d Cir. 1981) ....................................................................... 17, 19

*Friedlob v. Trustees of Alpine Mut. Fund Trust,*
905 F. Supp. 843 (D. Colo. 1995)........................................................................ 3

*Fuente v. DCI Telecomms., Inc.,*
259 F. Supp. 2d 250 (S.D.N.Y. 2003) .................................................................. 5

*Gartenberg v. Merrill Lynch Asset Mgmt., Inc.,*
528 F. Supp. 1038 (S.D.N.Y. 1981), *aff'd*, 694 F.2d 923 (2d Cir. 1982) ...................... 20

*Gonzaga Univ. v. Doe,*
536 U.S. 273 (2002).......................................................................................... 18

## TABLE OF AUTHORITIES
(continued)

**Page**

*Gonzalez Turul v. Rogatol Distribs., Inc.,*
  951 F.2d 1 (1st Cir. 1991).................................................................................. 8

*Green v. Fund Asset Mgmt.,*
  19 F. Supp. 2d 227 (D.N.J. 1998) ....................................................... 3, 5, 20

*Green v. Fund Asset Mgmt.,*
  245 F.3d 214 (3d Cir. 2001) ........................................................................ 25

*Green v. Nuveen Advisory Corp.,*
  186 F.R.D. 486 (N.D. Ill. 1999)................................................................... 9

*Greenspun v. Lindley,*
  330 N.E.2d 79 (N.Y. 1975)..................................................................... 9, 16

*Grossman v. Johnson,*
  674 F.2d 115 (1st Cir. 1982)................................................................... 8, 10

*Halligan v. Standard & Poor/Intercapital, Inc.,*
  434 F. Supp. 1082 (E.D.N.Y. 1977) ......................................................... 20

*Halsted Video Inc. v. Guttillo,*
  115 F.R.D. 177 (N.D. Ill. 1987)................................................................ 28

*Harhen v. Brown,*
  730 N.E.2d 859 (Mass. 2000) .......................................... 7, 11, 12, 13, 14, 26

*Heit v. Baird,*
  567 F.2d 1157 (1st Cir. 1977).......................................................... 13, 14, 16

*Helitrope Gen., Inc. v. Ford Motor Corp.,*
  189 F.3d 971 (9th Cir. 1999) ....................................................................... 1

*Horton v. Benjamin,*
  No. CIV. A. 92-06697, 1997 WL 778662 (Mass. Super. Ct. Nov. 26, 1997)................. 4

*Houle v. Low,*
  556 N.E.2d 51 (Mass. 1990) ................................................................. 6, 26

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.,*
  310 F. Supp. 2d 819 (S.D. Tex. 2004) ........................................................ 4

*In re KMF Actions,*
  56 F.R.D. 128 (D. Mass. 1972)............................................................ 10, 16

## TABLE OF AUTHORITIES
(continued)

**Page**

*In re Kauffman Mut. Fund Actions,*
  479 F.2d 257 (1st Cir. 1973) ......................................................................... 8, 10

*In re ML-Lee Acquisition Fund Sec. Litig.,*
  848 F. Supp. 527 (D. Del. 1994) .......................................................................... 3

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,*
  272 F. Supp. 2d 243 (S.D.N.Y. 2003) ............................................................... 1, 4

*In re Merrill Lynch Focus Twenty Fund Inv. Co. Act Litig.,*
  218 F.R.D. 377 (E.D.N.Y. 2003), aff'd, 380 F.3d 133 (2d Cir. 2004) ........................... 18

*In re Nuveen Fund Litig.,*
  No. 94C360, 1996 WL 328006 (N.D. Ill. June 11, 1996) ............................................ 17

*In re Rospatch Sec. Litig.,*
  Nos. 1:90-CV-805 *et al.,*
  1991 WL 335253 (W.D. Mich. Oct. 11, 1991) ...................................................... 5

*In re Worldcom, Inc. Sec. Litig.,*
  294 F. Supp. 2d 431 (S.D.N.Y. 2003) ............................................................... 1, 4

*Jones v. Equitable Life Assurance Soc.,*
  409 F. Supp. 370 (S.D.N.Y. 1975) ................................................................ 13, 16

*Kahn v. Kohlberg,*
  970 F.2d 1030 (2d Cir. 1992) ........................................................................ 5, 6

*Kalish v. Franklin Advisers, Inc.,*
  742 F. Supp. 1222 (S.D.N.Y. 1990), *aff'd,* 928 F.2d 590 (2d Cir. 1991) ...................... 24

*Kamen v. Kemper Fin. Servs., Inc.,*
  500 U.S. 90 (1991) ...................................................................................... 7

*King v. Douglass,*
  973 F. Supp. 707 (S.D. Tex. 1996) ................................................................... 24

*Kirley v. Kirley,*
  521 N.E.2d 1041 (Mass. App. Ct. 1988) ............................................................... 4

*Krantz v. Fidelity Mgmt. & Research, Co.,*
  98 F. Supp. 2d 150 (D. Mass. 2000) .................................................................. 21

*Krantz v. Prudential Inv. Fund Mgmt., LLC,*
  305 F.3d 140 (3d Cir. 2002) .......................................................................... 24

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Kravetz v. US Trust Co.,*
    941 F. Supp. 1295 (D. Mass. 1996) ................................................................ 4

*Krinsk v. Fund Asset Mgmt., Inc.,*
    875 F.2d 404 (2d Cir. 1989) ...................................................................... 20

*Krinsk v. Fund Asset Mgmt., Inc.,*
    No. 85 Civ. 8428, 1986 WL 205 (S.D.N.Y., May 9, 1986) ............................... 3

*Lattuca v. Robsham,*
    812 N.E.2d 877 (Mass. 2004) .................................................................... 4

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,*
    No. 02 C 5893, 2004 WL 574665 (N.D. Ill. March 22, 2004) .................. 4, 17

*Lerman v. ITB Mgmt. Corp.,*
    58 F.R.D. 153 (D. Mass. 1973) ................................................................. 10

*Levine v. Prudential Bache Props., Inc.,*
    855 F. Supp. 924 (N.D. Ill. 1994) ............................................................. 28

*Levy v. Alliance Capital Mgmt., L.P.,*
    No. 97 Civ. 4672 (DC), 1998 WL 744005 (S.D.N.Y. Oct. 26, 1998) ........... 24

*Lieberman v. Becker,*
    155 A.2d 596 (Del. 1959) ......................................................................... 25

*Locicero v. Leslie,*
    948 F. Supp. 10 (D. Mass. 1996) ............................................................... 4

*Love v. Delta Air Lines,*
    310 F.3d 1347 (11th Cir. 2002) ................................................................ 19

*Marcus v. Textile Banking Co.,*
    38 F.R.D. 185 (S.D.N.Y. 1965) ................................................................ 27

*Marcus v. Putnam,*
    60 F.R.D. 441 (D. Mass. 1973) ................................................................ 25

*McLachlan v. Simon,*
    31 F. Supp. 2d 731 (N.D. Cal. 1998) ....................................................... 17

*Meiselman v. Ebertstadt,*
    170 A.2d 720 (Del. Ch. 1961) ................................................................. 25

# TABLE OF AUTHORITIES
(continued)

**Page**

*Merine v. Prudential-Bache Util. Fund, Inc.,*
    859 F. Supp. 715 (S.D.N.Y. 1994) .......................................................................... 3, 20

*Migdal v. Rowe Price-Fleming Int'l, Inc.,*
    248 F.3d 321 (4th Cir. 2001) .......................................................................... 13, 23, 24

*Olesh v. Dreyfus Corp.,*
    No. CV-94-1664 (CPS), 1995 WL 500491 (E.D.N.Y. Aug. 8, 1995)........................... 21

*Olmsted v. Pruco Life Ins. Co. of New Jersey,*
    283 F.3d 429 (2d Cir. 2002) .......................................................................... 18, 20

*Omni Fin. Corp. v. Cohen,*
    No. 91 Civ. 6837, 1994 WL 97125 (S.D.N.Y. March 22, 1994) ..................................... 3

*Pfeiffer v. Bjurman, Barry & Assocs.,*
    No. 03 Civ.9741 DLC, 2004 WL 1903075 (S.D.N.Y. Aug. 26, 2004)........................ 23

*Randolph County Fed. Sav. & Loan Ass'n v. Sutliffe,*
    775 F. Supp. 1113 (S.D. Ohio 1991) .......................................................................... 5

*Resolution Trust Corp. v. Gladstone,*
    895 F. Supp. 356 (D. Mass. 1995) .......................................................................... 4

*Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
    292 F.3d 1334 (11th Cir. 2002) .......................................................................... 27

*Rogosin v. Steadman,*
    71 F.R.D. 514 (S.D.N.Y. 1976) .......................................................................... 28

*S.E.C. v. Caserta,*
    75 F. Supp. 2d 79 (E.D.N.Y. 1999) .......................................................................... 5

*Sagalyn v. Meekins, Packard & Wheat, Inc.,*
    195 N.E. 769 (Mass. 1935) .......................................................................... 26

*Saxe v. Brady,*
    184 A.2d 602 (Del. Ch. 1962) .......................................................................... 25

*Scalisi v. Fund Asset Mgmt., L.P.,*
    380 F.3d 133 (2d Cir. 2004) .......................................................................... 18

*Seidel v. Lee,*
    954 F. Supp. 810 (D. Del. 1996).......................................................................... 5

# TABLE OF AUTHORITIES
(continued)

**Page**

*Shafnacker v. Raymond James & Assocs., Inc.*,
    683 N.E.2d 662 (Mass. 1997) ........................................................................... 4

*Skolnik v. Rose*,
    431 N.Y.S.2d 25 (N.Y. App. Div. 1980), *aff'd*, 449 N.Y.S. 2d 182 (1982) ..................... 9

*Smachlo v. Birkelo*,
    576 F. Supp. 1439 (D. Del. 1983) ......................................................... 27, 28

*Spiegel v. Beacon Participations, Inc.*,
    8 N.E.2d 895 (Mass. 1937) .............................................................................. 26

*Starer v. Baxter Healthcare Corp.*, 2003 WL 21918885 (D. Mass. Aug. 12, 2003) .................. 6

*Strougo v. Scudder, Stevens & Clark, Inc.*,
    964 F. Supp. 785 (S.D.N.Y. 1997) ................................................... 17, 19, 24

*Sunderland v. Andover Ret. Bd.*,
    Civ. A. No. 96-2510C, 1997 WL 202278 (Mass. Super. Ct. Apr. 24, 1997) .................. 4

*Surowitz v. Hilton Hotels Corp.*,
    383 U.S. 363 (1966) ...................................................................................... 28

*Swartz v. Sher*,
    184 N.E.2d 51 (Mass. 1962) ............................................................................ 9

*Tarlov v. Paine Webber Cashfund, Inc.*,
    559 F. Supp. 429 (D. Conn. 1983) ................................................................. 20

*Uccello v. Gold'n Foods, Inc.*,
    90 N.E.2d 530 (Mass. 1950) .......................................................................... 26

*Untremeyer v. Fidelity Daily Income Trust*,
    580 F.2d 22 (1st Cir. 1978) ............................................................................. 8

*Verkouteren v. Blackrock Fin. Mgt.*,
    37 F. Supp. 2d 256 (S.D.N.Y. 1999) ............................................................. 13

*Webowsky v. Collomb*,
    766 A.2d 123 (Md. 2001) ............................................................................... 10

*Young v. Nationwide Life Ins. Co.*,
    2 F. Supp. 2d 914 (S.D. Tex. 1998) ......................................................... 17, 19

*Zucker v. Katz*,
    708 F. Supp. 525 (S.D.N.Y. 1989) ................................................................ 29

**TABLE OF AUTHORITIES**
(continued)

**Page**

**STATUTES**

15 U.S.C. Section 80a-2(a)(19) ................................................................................. 13

15 U.S.C. Section 80a-36(a) ......................................................................................2

15 U.S.C. Section 80a-36(a) ......................................................................................2

28 U.S.C. Section 1332 ............................................................................................ 27

28 U.S.C. Section 1658(b) ........................................................................................ 3

Federal Rule of Civil Procedure 23.1 ............................................................... 7, 8, 28

Mass. Gen. Laws ch. 182 Section 2B ...................................................................... 12

Mass. Rule of Civil Procedure 23.1 .......................................................................... 8

ALM GL ch. 156D § 7.42 ..........................................................................................9

S. Rep. No. 91-184 (1970) ...................................................................................... 25

Defendants RS Investment Management, L.P. ("RS Investments"), G. Randall Hecht, Leonard B. Auerbach, Jerome S. Contro, John W. Glynn, Jr., and Michael McCaffery (collectively, "RS Defendants") hereby submit this memorandum of law in support of their motion to dismiss plaintiff Robert Emma's purported derivative complaint.

## BACKGROUND

The RS Emerging Growth Fund (the "Fund") is a mutual fund that invests in smaller, rapidly growing companies. On January 6, 2000, Morningstar – the leading source of research, commentary, and criticism on mutual funds – announced that the portfolio manager of the Fund was "Mutual Fund Manager of the Year" for domestic funds. *See* Burns Decla, Exh. A.[1] Morningstar reported that the Fund returned 183% for investors in 1999. As a result of the Morningstar award and these impressive returns, thousands of individual investors flocked to the Fund seeking fast and easy profits. To protect the Fund and investors[2], RS Investments in April of 2000 stopped selling shares of the Fund to individual investors who sought to invest in the Fund without the assistance of a professional financial intermediary. The Fund remained open to all other investors, including institutional investors, pension funds, 401(k) plans, existing Fund shareholders, and individuals investing via certain financial intermediaries.

The Fund immediately disclosed its new policy and has continued to disclose the policy to the present time. *See* Burns Decla, Exh. B, p. 2; Exh. G, pp. 6-7. Moreover, since May 2000, Fund prospectuses have continuously disclosed that RS Investments imposes a 0.25% "12b-1 fee," which is an SEC-sanctioned fee collected to compensate financial advisers, brokers, and financial intermediaries that do the work of marketing and distributing the Fund to shareholders.[3] *See* Burns Decla, Exh. C, p. 5; Exh. D, p. 7; Exh. E. p. 6; Exh. F, p. 9; and Exh. G, p. 13.

---

[1] The Court may review information that was disclosed in published reports or articles. *See Helitrope Gen., Inc. v. Ford Motor Corp.,* 189 F.3d 971, 981 (9th Cir. 1999) (financial articles); *In re Worldcom, Inc. Sec. Litig.,* 294 F. Supp. 2d 431, 445 n.19 (S.D.N.Y. 2003) (news reports); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 272 F. Supp. 2d 243, 250 n.5, 254 n.9 (S.D.N.Y. 2003) (newspaper articles and stock prices quotes).

[2] Successful mutual funds commonly close to new investors, or to certain classes of investors, if asset levels become too high or if an actual or prospective influx of "performance chasing" investors threatens to destabilize a fund's asset base.

[3] 12b-1 fees are also known as "distribution" fees because they are payments by a mutual fund in exchange for a distributor's efforts to market and distribute fund shares to investors. PFPC Distributors Inc.'s (PFPC) motion to dismiss, filed concurrently with this Motion, contains a more extensive background, which the RS Defendants hereby incorporate, regarding the nature of 12b-1 fees and the services that mutual funds receive in exchange for the payment of such fees.

On October 1, 2004, *four and a half years* after the Fund changed its sales policy regarding individual investors, plaintiff filed the present action asserting claims under Section 36(a) and 36(b) of the Investment Company Act of 1940, as amended (the "Investment Company Act" or "ICA"), 15 U.S.C. §§ 80a-36(a) and (b) (hereinafter, "Section 36(a)" and "Section 36(b)") and under Massachusetts fiduciary duty law. The premise of plaintiff's suit is simple: defendants should have abolished 12b-1 fees after the Fund was, as plaintiff puts it, "closed to all new investors."

Plaintiff's claims fail as a matter of law on numerous grounds. First, the applicable statutes of limitations have expired on all of plaintiff's claims. Second, plaintiff's derivative claims under Section 36(a) and Massachusetts law require a pre-suit demand on the RS Trustees, and the "futility" exception to demand does not apply here. Third, the core premise of plaintiff's lawsuit – that the Fund is "closed to all new investors" – is simply wrong. In fact, the Fund remains open to any investors purchasing shares via financial institutions – one of the distribution channels that 12b-1 fees are intended to subsidize. Fourth, plaintiff lacks standing to bring a claim under Section 36(a), which is inapplicable to excessive fee allegations in any event. Fifth, for a multitude of reasons too numerous to summarize in introductory remarks, plaintiff fails to plead facts sufficient to state a Section 36(b) claim. Sixth, plaintiff has failed to comply with the verification and ownership requirements of Federal Rule of Civil Procedure 23.1.

## ARGUMENT

### I.    The Applicable Statutes of Limitations Bar All of Plaintiff's Claims

#### A.    Section 36(a) and 36(b) Claims Each Have a One-Year Statute of Limitations

By May 15, 2000, the Fund had announced its new policy regarding direct investments by individuals – the so-called "closure" of the Fund that plaintiff alleges. Moreover, as noted above, the Fund's prospectus at all times disclosed 12b-1 fees of 0.25%. Accordingly, the statute of limitations began running on or before May 15, 2000, when the facts forming the basis of plaintiff's claims were known or should have been known.

Courts have consistently affirmed the one-year statute of limitations and three-year period of repose governing claims under the Investment Company Act, including claims under Sections 36(a) and 36(b).[4]  Pursuant to the one-year/three-year limitation, plaintiff in this case was required to commence this suit within the *earlier* of: (1) one year from the date upon which the facts underlying his claims were known or should have been known; or (2) three years from the date of the alleged violation.  Given that plaintiff unquestionably knew or should have known by May 15, 2000 that the Fund had altered its new investor policy (while charging 12b-1 fees), the final day for plaintiff to file suit under Section 36 was May 14, 2001.  Furthermore, according to plaintiff's allegations, the Fund's new policy went into effect on April 28, 2000, which means that the three-year period of repose expired on April 28, 2003.

Possibly, plaintiff will argue that the Sarbanes-Oxley Act of 2002 ("SOX") alters the above analysis because SOX extended the statute of limitations for certain fraud-based securities claims from one-year/three-years to two-years/five-years.[5]  Such an argument cannot succeed for two reasons.  First, SOX extended the statute of limitations only for securities claims involving "fraud, deceit, manipulation, or contrivance."  28 U.S.C. Section 1658(b).  Subsequent to passage of SOX, courts have strictly applied this requirement, repeatedly declining to apply the extended two-year/five-year statute of limitations to claims that are not grounded upon

---

[4] *See Krinsk v. Fund Asset Mgmt., Inc.*, No. 85 Civ. 8428 JMW, 1986 WL 205, at *2-4 (S.D.N.Y., May 9, 1986) ("highly restrictive limitations on actions under Section 36(b) evidence an intent by Congress to protect investment advisors and their affiliates from open-ended litigation and nuisance suits"); *In re ML-Lee Acquisition Fund Sec. Litig.*, 848 F. Supp. 527, 550-52 (D. Del. 1994) (limitations period in private action pursuant to Investment Company Act is earlier of one year from discovery or three years from violation); *Blatt v. Dean Witter Reynolds Intercapital, Inc.*, 566 F. Supp. 1294, 1298 (S.D.N.Y. 1983), *aff'd*, 732 F.2d 304 (2d Cir. 1984) ("statute of limitations under Section 36(b) is only one year"); *Friedlob v. Trustees of Alpine Mut. Fund Trust*, 905 F. Supp. 843, 855-56 (D. Colo. 1995) (holding that claims brought under Sections 8(b), 13(a), 15(c), 17(e) and 21 of ICA are subject to one-year/three-year limitations period under 1933 and 1934 Acts since ICA is intended to facilitate same central goal of protecting investors); *Green v. Fund Asset Mgmt.*, 19 F. Supp. 2d 227, 231-32 (D.N.J. 1998) (ruling that one-year/three-year limitations to ICA claim under Section 20); *In re Taxable Mun. Bond Sec. Litig.*, No. Civ. A. MDL 863, 1992 WL 124783, at *3 (E.D. La. June 4, 1992) (applying one-year/three-year limitations period to private claims under ICA Sections 7 and 8), *aff'd*, 964 F.2d 1144 (5th Cir. 1992); *Merine v. Prudential-Bache Util. Fund, Inc.*, 859 F. Supp. 715, 721-22 (S.D.N.Y. 1994) (applying one-year/three-year limitations period to claim under Section 20(a) of ICA).  Section 36(b) also places a substantive limit on damages, capping any damages to those incurred in the year prior to filing.  *Krinsk*, 1986 WL 205, at *4 (one-year limitation expressly provided by Congress in Section 36(b)(3) of ICA places "substantive limit on damages").

[5] In certain cases, SOX supplants one-year/three-year standard and requires commencement of an action before the earlier of (1) two years after the discovery of the facts constituting the violation, or (2) five years after the violation occurred.  28 U.S.C. Section 1658(b).

allegations of intentional or willful conduct designed to deceive or defraud investors.[6]  In the present case, plaintiff's Section 36 claims do not sound in "fraud, deceit, manipulation, or contrivance" because the Complaint sets forth no facts alleging that any defendant intended to defraud shareholders.  Nor could it, given that the so-called "closure" of the Fund and continued imposition of 12b-1 fees were fully disclosed to shareholders at all times.[7]  Second, even if the two-year/five-year statute of limitations applied to this case, plaintiff's Section 36 claims would still be untimely  The so-called "closure" of the Fund (and continued imposition of 12b-1 fees) occurred with full disclosure on or before May 15, 2000.  Thus, more than two years have passed since the facts underlying plaintiff's claims were known or should have been known.

> **B.     A Three-Year Statute of Limitations Governs Plaintiff's Claim for Breach of Fiduciary Duty Under Massachusetts Law**

Under Massachusetts law, claims for breach of fiduciary duty in the corporate context sound in tort and are subject to a three-year statute of limitations.[8]  As discussed above, the facts

---

[6] *In re Worldcom, Inc. Sec. Litig.,* 294 F. Supp. 2d 431, 440-44 (S.D.N.Y. 2003) (ruling that SOX's extended statute of limitations does not apply to *every* private securities law claim, but is instead limited to private causes of action for securities claims that involve "fraud, deceit, manipulation or contrivance"); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,* 272 F. Supp. 2d 243, 265 (S.D.N.Y. 2003) (ruling that SOX's extended statute of limitations applies to claims arising under Section 10(b) of 1934 Act, but not to any claim under Section 11 or Section 12(a)(2) which do not sound in fraud); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.,* No. 02 C 5893, 2004 WL 574665, at *13-14 (N.D. Ill. Mar. 22, 2004) (holding that plain language of SOX limits extended statute of limitations only to claims including "fraud, deceit, manipulation, or contrivance" and does *not* apply to non-fraud based claims); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.,* 310 F. Supp. 2d 819, 844 (S.D. Tex. 2004) (refusing to apply SOX's extended statute of limitations to claims under Sections 10(b) and 20(a) of 1934 Act and to Sections 11, 12(a)(2), and 15 of 1933 Act).

[7] In two different passages of the Complaint, plaintiff alleges that his allegations against the Trustee defendants – whom plaintiff does not name in his Section 36(b) claim – sound in "willful misfeasance, bad faith, gross negligence, and reckless disregard of duties." *See* Complaint ¶¶ 51, 53.  This allegation, which is a bare conclusion in any event, inarguably sounds in negligence or ordinary recklessness, falling short of "conduct designed to deceive or defraud investors."  Furthermore, if the Complaint did in fact sound in fraud (which it does not), then it would fail on numerous additional grounds, including failure to plead fraud and scienter with the particularity required by Rule 9(b).

[8] *See Lattuca v. Robsham,* 812 N.E.2d 877, 884 (Mass. 2004) (holding that breach of fiduciary duty sounds in tort and three-year period of limitations applies); *Demoulas v. Demoulas Super Mkts, Inc.,* 677 N.E.2d 159, 172 (Mass. 1997) (claim for fiduciary duty via diversion of corporate opportunities and self-dealing sounds in tort and is subject to three-year statute); *Shafnacker v. Raymond James & Assocs., Inc.,* 683 N.E.2d 662, 665 (Mass. 1997) (applying three-year statute of limitation to investor's claims for breach of fiduciary duty against securities brokers and representatives); *Kirley v. Kirley,* 521 N.E.2d 1041, 1043 (Mass. App. Ct. 1988) (noting trend toward deeming breach of fiduciary duty a tort with three-year statute); *Aiello v. Aiello,* No. 983289, 2000 WL 281662, at *2 (Mass. Super. Ct. Jan. 19, 2000) (holding that "[c]laims of breach of fiduciary duty … sound in tort and are governed by three-year statute of limitations"); *Horton v. Benjamin,* No. CIV.A. 92-06697, 1997 WL 778662, at *25 (Mass. Super. Ct. Nov. 26, 1997) (ruling that plaintiff's claim for breach of fiduciary duty sounds in tort and is governed by three-year statute of limitations); *Sunderland v. Andover Ret. Bd.,* Civ. A. No. 96-2510C, 1997 WL 202278, at *2-3 (Mass. Super. Ct. Apr. 24, 1997) (noting that in Massachusetts, as well as in other jurisdictions, claim for breach of fiduciary duty in corporate context sounds in tort); *Crowley v. Polar Corp.,* No. 932088, 1994 WL 879357, at *2 (Mass. Super. Ct. Oct. 17, 1994) ("Massachusetts precedent considers a breach of fiduciary duty as a tort for statute of limitation purposes").  In *Resolution Trust Corp. v. Gladstone,* 895 F. Supp. 356, 374 (D. Mass. 1995), the Court applied a six-year statute of limitations (the statute applicable to contract claims in Massachusetts) to a claim for breach of fiduciary duty because the gravamen of the plaintiff's claim was that an implied contractual relationship existed between a financial institution and the *Gladstone* defendants, who were directors and

giving rise to plaintiff's allegations – the so-called "closure" of the Fund and continued imposition of 12b-1 fees – were disclosed by May 15, 2000. Thus, the statute of limitations expired on plaintiff's state law claims by May 15, 2003 at the latest.

        **C.**      **The "Continuing Wrong" Theory Will Not Salvage Plaintiff's Untimely Claims**

Plaintiff may argue that the statute of limitations has not expired because, since April 28, 2000, the RS Defendants have "continued" their purported violations by declining to alter or terminate the 12b-1 Plan. Plaintiff may cite to paragraphs 40-41, 50-54, and 63 of the Complaint to argue that his claims accrued afresh at each annual meeting since April 28, 2000 at which the Trustees decided to retain the *status quo*.

Courts have repeatedly rejected this type of "continuing wrong" theory as applied to claims under the Investment Company Act.[9] In fact, at least two courts have suggested that the continuing wrong doctrine may not even apply to securities litigation. *Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250, 269-70 (S.D.N.Y. 2003) (noting that it is unclear whether doctrine of continuing wrong is applicable in securities litigation context); *S.E.C. v. Caserta,* 75 F. Supp. 2d 79, 89 (E.D.N.Y. 1999) ("it is not at all certain that the continuing violation doctrine applies in securities fraud litigation").

---

officers of the financial institution. Based on this rationale, the Court applied the six-year statute of limitations applicable to contract claims. Subsequent to *Gladstone*, other decisions of this Court have continued to apply the three-year statute of limitations to claims for breach of fiduciary duty. *See Locicero v. Leslie*, 948 F. Supp. 10, 12 (D. Mass. 1996) (three-year statute of limitations applied in context of attorney malpractice claim); *Kravetz v. US Trust Co*., 941 F. Supp. 1295, 1302 (D. Mass. 1996) (three-year statute of limitations applied to claim by investors against investment advisers for allegedly inducing investors to purchase limited partnership interests that were inconsistent with investment objectives).

[9] *See Green*, 19 F. Supp. 2d at 233 (rejecting plaintiffs' continuing wrong argument when considering timeliness of claims under Sections 8(e), 34(b) and 36(a) of ICA); *Seidel v. Lee*, 954 F. Supp. 810, 813-14 (D. Del. 1996) (refusing to apply continuing wrong theory to plaintiffs' claims under ICA "merely because a defendant engaged in a series of similar acts that all violate the same statute"). Several courts have noted that extension of the limitations period in such a manner would largely nullify the one-year/three-year statute of limitations that governs most securities cases. *Green*, 19 F. Supp. 2d. at 233 (refusing to apply continuing wrong theory and noting that "[t]o allow plaintiffs to circumvent the three-year repose period … would conflict with the purpose of the one-year/three-year statutory scheme"); *Kahn v. Kohlberg*, 970 F.2d 1030, 1039-41 (2d Cir. 1992) (holding that continuing wrong theory applies only "when the statute of limitations would have expired if it commenced at the time of defendant's first act … [and] is based primarily upon the impracticality and unfairness of requiring a plaintiff to institute his action before he can predict his damages")**;** *Randolph County Fed. Sav. & Loan Ass'n v. Sutliffe,* 775 F. Supp. 1113, 1123 (S.D. Ohio 1991) (holding that purpose of three-year period of repose is to "serve as a cut-off to which tolling principles do not apply"); *In re Rospatch Sec. Litig.,* Nos. 1:90-CV-805, 1:90-CV-806, 1:90-CV-85, 1991 WL 335253, at *4 (W.D. Mich. Oct. 11, 1991) (ruling that continuing wrong doctrine could not hold plaintiff's federal securities claims survive statute of limitations); *Blatt v. Merrill Lynch*, 916 F. Supp. 1343, 1352 (D.N.J. 1996) ("to consider an investment company's failure to register with the SEC as a continuing violation would ignore the whole purpose behind a statute of limitations and the importance of the policy of repose").

The rationale of cases rejecting the continuing wrong theory is applicable here.  The continuing wrong theory is premised upon the unfairness of requiring a plaintiff to institute his action before he can predict the full sum of future damages.  *See Kahn,* 970 F.2d at 1039 (citing *Taylor v. Meirick,* 712 F.2d 1112, 1119 (7th Cir. 1983)).  The theory thus cannot apply to "excessive fee" claims under the Investment Company Act, which allow recovery only for fees paid in the preceding twelve months.  Furthermore, extinguishment of plaintiff's right to sue for excessive 12b-1 fees is not unfair given that the Fund changed its entrance eligibility requirements (while maintaining 12b-1 fees) *four and half years ago*.   Since that time, neither plaintiff nor his counsel has ever questioned the 12b-1 fees assessed to the Fund – until, that is, plaintiff filed this lawsuit without first notifying or lodging a request or demand upon either shareholders or the Board of Trustees.[10]

Plaintiff may also argue – in a subtle variation on the continuing wrong theory – that the RS Defendants did not commit a continuing wrong beginning on April 28, 2000, but instead committed a chain of "new" wrongs, each one causing a claim to accrue anew.  In support of such an argument, plaintiff may point to paragraphs 40-42 and 63 of the Complaint, which allege that the RS Trustees had opportunities at least annually to alter the *status quo*.

 For three reasons, plaintiff cannot sidestep the "continuing wrong" issue in this way.  First, such an argument cannot apply to plaintiff's Section 36(b) claim, which is not asserted against the RS Trustees, but only against RS Investments and PFPC, who did not approve the 12b-1 Plan or fees.  Second, the gravamen of plaintiff's claims is *not* that the RS Defendants committed repeated breaches of fiduciary duties, but is that they breached their fiduciary duties on April 28, 2000, and failed to cure the breach thereafter.  Third, even if the Complaint could be read to describe a string of "new" breaches, the Complaint contains no facts regarding any Board

---

[10] Courts applying Massachusetts law have also narrowly confined the continuing wrong theory so as to avoid abrogating the purpose of statutes of limitations – protecting settled expectations.  Massachusetts courts limit the continuing wrong theory to actions in nuisance and trespass to protect the "strong judicial preference to adhere to the purposes and policies of the statute of limitations."  *Beaudette v. Sentry Ins. A Mut. Co.,* 94 F. Supp 2d 77, 107 (D. Mass. 1999).  *See also Starer v. Baxter Healthcare Corp.,* No. Civ.A. 96CV10683PBS, 2003 WL 21918885, at *4 (D. Mass. Aug. 12, 2003) (rejecting continuing wrong theory and holding that claim  for breach of fiduciary duty (in corporate "freeze-out" context) is not continuing tort that would save claim from being barred by statute of limitations); *Houle v. Low,* 556 N.E.2d 51, 53 (Mass. 1990); *Deisenroth v. Numonics Corp.,* 997 F. Supp. 153, 156 (D. Mass. 1998) (citing *Houle* proposition that corporate "freeze out" is not continuing tort).

of Trustees meeting pertaining to 12b-1 fees after April 28, 2000. Given the dearth of allegations regarding post-April 28, 2000 events, subsequent Trustee decisions to continue the 12b-1 plan and fees must be considered just that: *continuation* of the course of action that commenced *four and a half years earlier*. In sum, plaintiff's claims accrued on or before May 15, 2000, and neither the continuing wrong theory nor any variation thereof can save the claims from dismissal.

## II.    Plaintiff Failed to Make Any Pre-Suit Demand on the RS Board of Trustees.

### A.    Derivative Claims Under Section 36(a) and Massachusetts Fiduciary Duty Law Require a Pre-Suit Demand on the RS Board of Directors

Plaintiff's claims under Section 36(a) and Massachusetts law are subject to the pre-suit demand requirement.[11] This means that, prior to filing this lawsuit on behalf of the Fund, plaintiff was required to first to demand that the Fund's Board of Trustees investigate his allegations and, if appropriate, seek redress via litigation or some other, non-litigation means. *See* Fed. R. Civ. P. 23.1. *See also* Mass. R. Civ. Proc. 23.1.

Under Massachusetts law, prior to filing a derivative action on behalf of a corporation, a plaintiff must establish in his pleading that he or she exhausted all available means to obtain relief through the corporation by making a demand on the Board of Trustees to investigate and, if necessary, prosecute the litigation. *Harhen v. Brown,* 730 N.E.2d 859, 865 (Mass. 2000). The rationale of this demand requirement is simple: Trustees have the power to take action or sue others on behalf of the Fund, while shareholders do not. The purpose of the demand requirement is to afford the directors an opportunity to exercise their reasonable business judgment and to bring suit or, in the alternative, to waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right. *Kamen v. Kemper Fin. Serv., Inc.,* 500 U.S. 90, 96 (1991); *Harhen,* 730 N.E.2d at 865 ("as a basic principle of corporate

---

[11] Plaintiff's Section 36(b) claim – for breach of fiduciary duty involving the receipt of compensation – does not require a pre-suit demand because the claim is not derivative in nature. Only mutual fund shareholders, not mutual funds themselves, have standing to bring a Section 36(b) claim. Accordingly, plaintiff's Section 36(b) claim is brought directly, not derivatively, and plaintiff need not make a demand on the Board of Trustees, which the Board would be powerless to fully prosecute if it decided that p rosecution was in the Fund's best interest. *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 108 (1991) (Supreme Court emphasizing that its conclusion in *Daily Income Fund v. Fox,* 464 U.S. 523 (1984), that "shareholder action 'on behalf of' the company under [Section] 36(b) is *direct rather than derivative* and can therefore be maintained without any pre-complaint demand on the directors") (emphasis added).

governance, the board of directors or majority of shareholders should set the corporation's business policy, including the decision whether to pursue a lawsuit").

The requirement of a pre-suit demand is appropriately addressed in a Rule 12(b)(6) motion. Federal Rule of Civil Procedure 23.1 requires the plaintiff to allege "with particularity" the efforts, if any, made to induce desired corporate action by the board.[12] This is "not a technical rule of pleading, but one of substantive right ... the particularity must appear in the pleading itself; the stockholder must not plead in general terms, hoping that, by discovery or otherwise, he can later establish a case." *In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 264 (1st Cir. 1973), citing *Bartlett v. New York*, 109 N.E. 452, 456 (Mass. 1915). The demand requirement is stringently enforced in the First Circuit.[13]

The demand requirement is particularly important in the present case, where plaintiff's challenge focuses not on any malfeasance or fraud, but on a matter of pure business judgment – i.e., whether the distribution fees that the Fund pays are too high. However, despite the clear necessity of a pre-suit demand, plaintiff concedes that he chose to commence this lawsuit without so much as notifying the Trustees of the nature of his grievance, much less presenting the Trustees with a demand to lower the Fund's distribution fees and to seek redress for purportedly excessive past fees. By failing to make a demand, plaintiff chose to bypass the Trustees' rightful authority to pursue and resolve problems impacting the Fund. Plaintiff instead concluded that, even after a four and a half year wait, immediate litigation was the best means for airing his grievances. For his failure to make a demand, which negated any possibility of achieving an internal remedy to his grievances, plaintiff's purported derivative complaint should be dismissed.

---

[12] In federal court, state law provides the substantive elements for establishing futility, while Federal Rule of Civil Procedure 23.1 governs the pleading of the substantive elements. Nevertheless, Massachusetts' own rule governing the pleading of demand futility – Massachusetts Rule of Civil Procedure 23.1 – is virtually identical to the federal Rule 23.1.

[13] *See Gonzalez Turul v. Rogatol Distribs., Inc.,* 951 F.2d 1, 2 (1st Cir. 1991) (stating that First "[C]ircuit vigorously enforces this requirement and will dismiss derivative actions when plaintiffs do not comply"); *Grossman v. Johnson,* 674 F.2d 115, 123 (1st Cir. 1982) (declaring that in First Circuit demand "requirement has been 'vigorously enforced'") (quoting *Heit v. Baird,* 567 F.2d 1157, 1160 (1st Cir. 1977)); *Untremeyer v. Fidelity Daily Income Trust,* 580 F.2d 22, 23 (1st Cir. 1978) (writing that cases in First Circuit generally take strict view of pre-suit demand requirement) (citing *In re Kauffman Mut. Fund Actions,* 479 F.2d 257 (1st Cir. 1973).

### B.    Plaintiff's "Futility" Allegations do Nothing to Excuse Demand

#### 1.    Plaintiff's Allegation That Demand Would Be "Futile" is Irrelevant Because Massachusetts Recently Abolished the "Demand Futility" Exception to Demand

The Massachusetts Legislature recently abolished the "demand futility" exception to demand.  Now, under Massachusetts Business Corporations Act ("new Corporations Act") ch. 156D, § 7.42, plaintiffs in *all* shareholder derivative actions must lodge a demand on the board of directors prior to bringing suit, whether or not plaintiffs believe that demand would be futile. *See* ALM GL ch. 156D, § 7.42.  In other words, Massachusetts has adopted the "universal demand" rule that a growing number of states have passed into law.

Although the various provisions of the new Corporations Act do not uniformly apply to business trusts, no court has yet resolved whether the new Corporation Act's universal demand requirement should apply in derivative suits involving trusts.[14]  However, courts have repeatedly affirmed that corporations and business trusts are analogous in numerous contexts—specifically in the context of shareholder derivative actions. *Greenspun v. Lindley*, 330 N.E.2d 79, 81 (N.Y. 1975) (holding that the Massachusetts demand requirement and futility rules that apply to corporations also apply to Massachusetts business trusts in shareholder derivative actions and noting absence of legal or practical reasons for differentiating between business trusts and corporations); *Skolnik v. Rose*, 431 N.Y.S.2d 25, 25 (N.Y. App. Div. 1980), *aff'd*, 449 N.Y.S. 2d 182 (1982) (accepting plaintiff's analogy of business trust to corporation and holding that pre-suit demand was required under Massachusetts law).  *See also Swartz v. Sher*, 184 N.E. 2d 51, 53 (Mass. 1962) (business trusts are in many ways and in practical effect similar to corporations); *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 489 (N.D. Ill. 1999) (stating that in shareholder suits involving business trusts subject to Massachusetts law, courts have uniformly required shareholders to follow laws regarding derivative suits as applied to corporations).

Specifically, the demand rules applicable to business trusts have always borrowed the demand rules applicable to Massachusetts corporations.  Although it is not the case that all laws

---

[14] The Fund is a series of the RS Investment Trust, a Massachusetts business trust.

applicable to Massachusetts corporations apply to business trusts, in the case of demand rules in derivative suits, courts have consistently applied Massachusetts's corporate demand rules to derivative suits involving mutual or investment funds.[15]

Furthermore, by enacting Section 7.42 of the new Corporations Act, the Massachusetts Legislature has endorsed the sound policy rationales for a universal demand requirement.    As set forth in the Official Comment to § 7.42 of the Model Business Corporation Act (upon which the Massachusetts statute is modeled) these rationales are: (1) a universal demand requirement gives a board of directors the opportunity to re-examine the conduct complained of in the light of a potential lawsuit and to consider corrective action; and (2) a universal demand requirement in every shareholder derivative action, with no exceptions, will "eliminate[] the time and expense of the litigants and the court involved in litigating the question whether demand is required." *Webowsky v. Collomb*, 766 A.2d 123, 140-41 (Md. 2001).

No reason exists to believe that the Massachusetts Legislature did not intend boards of directors of mutual funds to benefit from a universal demand requirement to the same extent as corporate boards.  Furthermore, no indication exists that, by enacting Section 7.42 of the new Corporations Act, the Legislature intended to sever the uniformity that has existed for decades between business trusts and corporations in the context of the demand requirement and the futility exception.  Accordingly, Massachusetts' new universal demand statute should apply equally to business trusts, including series of trusts such as the Fund in the instant case.  Because plaintiff failed to make a pre-suit demand on the Trustees, the Court should dismiss his claims without reaching the merits of his "futility" excuse.

> **2.    Plaintiff Asserts a Single Ground to Establish "Demand Futility"**

Even if the Court declines to apply Massachusetts' new universal demand requirement in

---

[15] *See, e.g., Grossman*, 674 F. 2d at 125 (First Circuit's rigorous demand rules apply to shareholder derivative action on behalf of investment fund); *In re Kauffman Mut. Fund Actions*, 479 F. 2d 257, 264-65 (1st Cir. 1973) (applying Massachusetts demand futility laws to shareholder derivative action on behalf of mutual funds); *In re KMF Actions*, 56 F.R.D. 128, 136-37 (D. Mass. 1972) (same)**;** *Lerman v. ITB Mgmt. Corp.*, 58 F.R.D. 153,158-59 (D. Mass. 1973) (applying Massachusetts demand futility laws to shareholder derivative action on behalf of investment trust); *Bartlett v. New York, N.H. & H.R. Co.*, 109 N.E. 452, 453-54 (Mass. 1915) (holding that demand requirement in Massachusetts applies to unincorporated organizations and beneficiary corporations).

this action, dismissal is still clearly appropriate under a traditional demand futility analysis.  In his Complaint, ¶¶ 62-65, plaintiff attempts to establish the "futility" exception to pre-suit demand by alleging that the Trustees are "interested" because:

- The Trustees voted to approve the 12b-1 plan and agreement under which the Fund pays the allegedly excessive distribution fees;

- The Trustees voted to continue the 12b-1 fees on occasions after the Fund allegedly "closed" to new investors;[16] and

- The Trustees did not terminate the 12b-1 fees after the purported "closure" of the Fund despite receiving quarterly information regarding payment of the fees and despite the Trustees' clear power to terminate the fees at any time.

Complaint ¶ 63.  Plaintiff alleges that, as a result of these factors, a "significant prospect" exists that the Court will hold the Trustee defendants liable under Section 36(a) and Massachusetts fiduciary duty law, and thus demand on such "interested" Trustees would have been futile and should now be excused.  *See* Complaint ¶ 64 (arguing that demand should be excused pursuant to *Harhen*, 730 N.E.2d at 864-65 and fn. 5, which adopted the ALI's "significant prospect of liability" demand futility standard).

Massachusetts indeed adopted the ALI definition for identifying when a director is "interested" versus "disinterested" for purposes of considering a demand.  *See Harhen*, 730 N.E. 2d at 865 (quoting 1 ALI Principles of Corp. Gov.: Analysis and Recs. § 1.23 (1994) (hereinafter, "ALI § 1.23")).  Under the ALI/*Harhen* test, a director is "interested" if:

(1)    "The director ..., or an associate of the director ..., is a party to the transaction or conduct;"

(2)    "The director ... has a business, financial, or familial relationship with a party to the transaction or conduct, and that relationship would reasonably expected to affect the director's ... judgment ...;"

(3)    "The director ..., an associate of the director ..., or a person with whom the director ... has a business, financial, or familial relationship, has a material pecuniary interest in the transaction or conduct ...;"

---

[16] Paragraph 63.a. of the Complaint alleges that the Fund allegedly closed on "May 1, 2002."  This date allegation appears to be an error.  In other parts of the Complaint, plaintiff alleges that the Fund's purported closure occurred on April 28, 2000.

(4)     "The director ... is subject to a controlling influence by a party to the transaction or conduct or a person who has a material pecuniary interest in the transaction or conduct ...;" or

(5)     "The director is a defendant in the action, except that the fact a director is named as a defendant does not make the director interested under this section if the complaint against the director ... is based only on the fact that the director approved of or acquiesced in the transaction or conduct that is the subject of the action, and ... [the complaint] does not otherwise allege with particularity facts that, if true, raise a significant prospect that the director would be adjudged liable to the corporation or its shareholders."

As is common among complaints containing weak demand futility allegations, the Complaint in the present case relies *exclusively* on ground (5), a "bootstrapping" method of pleading demand futility that is reserved only for exceptionally strong complaints.  Plaintiff's Complaint, however, falls well short of alleging "with particularity" facts raising a "significant prospect" that a majority of RS Trustees will be adjudged liable under Section 36(a) and Massachusetts law. [17]

### 3.     Plaintiff's Demand Futility Allegations Must Overcome a Strong Presumption That "Independent Directors" Under the Investment Company Act are Indeed Independent

As a threshold matter, three of the four RS Trustees – Messrs. Auerbach, Contro, and Glynn – are independent and disinterested directors as a matter of law, thus casting a pall over plaintiff's demand futility allegations at the outset.  The Massachusetts Business Trust statute states that "[a] trustee of a trust who with respect to the trust is not an interested person, as defined in Investment Company Act of 1940 [§ 2(a)(19)], shall be deemed to be independent and disinterested when making any determination or taking any action as a trustee."  Mass. Gen. Laws ch. 182 Section 2B.  The definition of "interested person" in Section 2(a)(19) of the Investment Company Act does not deem a trustee "interested" for merely approving the continuation of certain fees.  *See* 15 U.S.C. Section 80a-2(a)(19).  *See also Migdal v. Rowe*

---

[17] In his Complaint, plaintiff also cites *Daily Income, Inc. v. Fox*, 464 U.S. 523, 546 (1984) as "reinforcement" for the conclusion that demand would have been futile against the Trustees in the present case.  *See* Complaint ¶ 65.  The *Daily Income* case, however, does not help plaintiff's demand futility argument because *Daily Income* is a Section 36(b) case.  Because Trustees do not have standing to bring Section 36(b) claims, a demand on Trustees to bring such a claim will always be "futile" in the broad sense of the word.  Justice Stevens's quote, taken from his concurrence, reflects this elementary fact.  Justice Stevens's statement does not mean that Trustees are *per se* "interested" or biased for demand futility purposes whenever a plaintiff alleges excessive advisory fees.

*Price-Fleming Int'l, Inc.*, 248 F.3d 321, 329-31 (4th Cir. 2001); *Verkouteren v. Blackrock Fin.*

*Mgt.*, 37 F. Supp. 2d 256, 258-61 (S.D.N.Y. 1999).  In this case, Messrs. Auerbach, Contro, and

Glynn are indisputably independent and disinterested directors under the Investment Company

Act, *see* Burns Decla, Exh. G, pp. 11-12, a fact that plaintiff does not dispute in the Complaint.

Accordingly, three of the four RS Trustees are "deemed to be independent and disinterested"

under Massachusetts law for demand futility purposes.

> **4.    Mere Approval of the Transactions at Issue Does Not Make the Trustees "Interested" for Demand Futility Purposes**

In addition to the Trustees' presumptive independence under Massachusetts law, it is

axiomatic that a plaintiff cannot somehow cause a Trustee to become "interested" for demand

futility purposes by the mere expedient of naming the Trustee as a defendant in the action.[18]  The

ALI/*Harhen* test adopts this rule, explicitly stating that

> the fact that a director is named as a defendant does not make the
> director interested under this section if the complaint against the
> director ... is based only on the fact that the director approved of or
> acquiesced in the transaction or conduct that is the subject of the
> action, and...does not otherwise allege with particularity facts that,
> if true, raise a significant prospect that the director would be
> adjudged liable ....

*See Harhen*, 730 N.E.2d at 865 (quoting from ALI § 1.23).

In the present case, plaintiff's allegations against the RS Trustees are premised, in the

words of ALI § 1.23, "only on the fact that the [Trustees] approved of or acquiesced in the

transaction or conduct that is the subject of the action."  In fact, aside from facts alleging that the

Trustee defendants "approved of or acquiesced in" continued imposition of 12b-1 fees on the

Fund, the Complaint is silent regarding conduct by the Trustees.  Plaintiff does not allege that

any Trustee engaged in self-dealing, received any benefit from the 12b-1 fees, or engaged in any

objectionable conduct other than to have simply made a business decision to "approve of or

---

[18] *Heit v. Baird*, 567 F.2d 1157, 1162 (1st Cir. 1977) ("Merely naming disinterested directors as defendants does not allow the prosecutor of a derivative suit to avoid his duty to make a demand on them") (citations omitted); *Harhen*, 730 N.E.2d at 865-66 (holding that "mere membership on a board at the time of the alleged wrongdoing, without more, does not result in interested status"); *Jones v. Equitable Life Assurance Soc.*, 409 F. Supp. 370, 373 (S.D.N.Y. 1975) (stating that "the strong policy of Rule 23.1 cannot be satisfied by simply adding the trustees as defendants").

acquiesce" to continued imposition of 12b-1 fees. Because the ALI/*Harhen* test requires that allegations go beyond mere approval and acquiescence, the Trustees are not "interested," demand would not have been "futile," and the Court should not excuse demand here.

> **5.** **There is Little or No Prospect – Much Less a "Significant Prospect" – That the RS Trustees Will Be Adjudged Liable Under Section 36(a) and Massachusetts Law**

To succeed in his stated method of pleading demand futility, plaintiff must "allege *with particularity* facts that, if true, raise a *significant prospect* that the director will be adjudged liable to the corporation or its shareholders." *Harhen*, 730 N.E.2d at 865 (emphasis added). In other words, because plaintiff invokes the "significant prospect of liability" method for pleading demand futility, the Court should scrutinize the allegations under a pleading rubric more akin to Rule 9(b) than Rule 8. *See Heit v. Baird*, 567 F.2d 1157, 1160 (1st Cir. 1977) (First Circuit vigorously enforces demand requirement, applying standard that is deliberate departure from Rule 8). Furthermore, for demand futility purposes, the typical Rule 12 (b)(6) "any set of facts" rubric is replaced by the far more onerous "significant prospect of liability" standard. Measured against these standard, the Complaint's demand futility allegations fail badly.

One significant failure of the Complaint is the evasive, inconsistent, and overreaching manner in which plaintiff pleads that the Fund "closed to all new investors." Plaintiff initiates his substantive allegations by repeatedly asserting that the Fund "closed" on April 28, 2000. Complaint ¶¶ 28, 29. Plaintiff further alleges that "exceptions" existed to this purported policy, yet plaintiff alleges no specific facts regarding these "exceptions," instead describing them conclusorily as "minor." *See* Complaint ¶¶ 28-29 (repeating caveat "with minor exceptions"). Later in the Complaint, where plaintiff articulates the gravaman of his claims, the unexplained "exceptions" to the Fund's closure simply disappear from view. *See, e.g.*, Complaint ¶ 35 ("In light of the *lack of any public sales or distributions* of shares since April 28, 2000, the costs incurred by the Corporate Defendants ... have been and will continue to be minimal"); ¶ 47 ("Because *no sales of Fund shares have been, or will be, made to the public* after April 28, 2000, the continuation of the [12b-1 plan and agreement] was (and continues to be) without any

reasonable basis ...") (emphases added).

Plaintiff's failure to plead facts describing the Fund's "closure" policy is not surprising. The Fund's prospectus clearly indicates that the Fund is not closed and, in fact, any person who wants to invest in the Fund can do so, provided they purchase through a financial institution. The Fund's May 1, 2004 prospectus states:

> The RS Emerging Growth Fund is currently offered (by purchase or exchange) only to existing investors, certain retirement plans, investors purchasing shares through certain financial institutions, employees of RS Investments and its affiliates, and their family members, and Trustees of the Trust and their family members. Contact RS Investments for more information. The Trust or RS Investments may change or waive this limitation at any time or from time to time in its discretion.

*See* Burns Decla, Exh. G, p. 7.

Plaintiff characterizes this language as meaning that the Fund is "closed to all new investors" with "minor exceptions." Yet, it is apparent that any person can invest in the Fund provided they purchase through a financial institution. As will be discussed more fully below, this investor entrance policy undermines the entire premise of plaintiff's lawsuit, especially given that an important purpose (among many) of 12b-1 fees is to promote distribution of fund shares via third-party financial institutions. More importantly for demand futility purposes, plaintiff's failure to plead any *specific facts* regarding the Fund's closure policy and the "minor exceptions" thereto dooms plaintiff's effort to allege *with particularity* facts that, if true, raise a *significant prospect* that directors will be held liable for violating Section 36(a) and Massachusetts fiduciary duty law by charging 12b-1 fees to a so-called "closed" fund.

A second significant flaw prevents plaintiff from meeting the "significant prospect of liability" standard for pleading demand futility. Namely, the Complaint sets forth only the most generalized, conclusory facts pertaining to the relative annual 12b-1 fees that the Fund paid before and after April 28, 2000, as well as the expenses that RS Investments and PFPC incurred in providing distribution services during that time. Instead, the Complaint alleges:

-15-

> During the period January 1, 2001 through December 31, 2003, the
> Fund paid RS Investments and Distributors $15,002,536. ...
> Plaintiff estimates that in the one year period prior to the filing of
> this action, the Fund paid RS Investments and Distributors
> approximately $3.5 million in Distribution Fees.

Complaint ¶ 43. Missing from this paragraph are any allegations speaking to the key question:

What happened to 12b-1 fees after the Fund changed its investor entrance policy?

In fact, the source of plaintiff's allegations regarding the amount of 12b-1 fees that the

Fund paid reveals that 12b-1 fees *declined significantly after the Fund altered its investor*

*entrance policy*. In 2000, the year the Fund altered its policy for new investments, the Fund paid

$12,684,558 in 12b-1 fees. *See* Burns Decla, Exh. F, p. 9. In 2001, the 12b-1 fees dropped to

$7,089,119. *See* Burns Decla, Exh. G, p. 14. In 2002, the fees fell again, to $4,298,785. *See id.*

In 2003, the fees fell yet again, to $3,614,632. *See id.* These falling 12b-1 fees are extremely

damaging to plaintiff's case, especially given the Complaint's lack of specific facts regarding the

"exceptions" to the "closure" policy, nor any specific facts regarding the corresponding expenses

that RS Investments and PFPC incurred in providing the distribution services.

In sum, for purposes of pleading demand futility, plaintiff falls far short of alleging

particular facts raising a significant prospect that *any party* – much less the Trustees – will be

held liable under Section 36(a) and Massachusetts state law. Plaintiff's futility allegations

amount to nothing more than an assertion that the Trustees "acquiesced or approved" of steadily

declining 12b-1 fees charged by a fund that remained open to any new investor who purchased

via a financial institution. Such allegations are wholly insufficient to create any risk of liability

by the Trustees, much less the "significant prospect" of liability required to plead demand

futility. *See Heit,* 567 F.2d at 1160 ("Where mere approval of the corporate action, absent self-

interest or other indication of bias, is the sole basis for establishing the directors' 'wrongdoing'

and hence for excusing demand on them, plaintiff's suit should ordinarily be dismissed").[19]

---

[19] Plaintiff's Complaint is substantially weaker and more generalized than numerous other complaints that courts have dismissed under Massachusetts law for failure to make a pre-suit demand *See, e.g., In re KMF Actions,* 56 F.R.D. at 141 (rejecting demand futility allegations premised on self-dealing and non-independence of directors and stating, "[i]f Rule 23.1 is to be more than a nicety of pleading and is to safeguard corporations from abuse, … it must mandate that there be some merit to allegations of 'futility' of demand"); *Greenspun v. Lindley,* 330 N.E.2d 79, 82 (N.Y. 1975) (dismissing allegations that Trustees allowed excessive fees because Massachusetts demand futility exception is narrow and plaintiff's Complaint, even when supplemented by

### III. Plaintiff Fails to Plead Facts Stating a Claim Under Section 36(a), Section 36(b), or Massachusetts State Law

Even if plaintiff's claims were not time-barred, and even if plaintiff's Section 36(a) and Massachusetts state law claims were not barred by the demand requirement, dismissal of the Complaint would still be appropriate because plaintiff fails to plead facts stating any claim.

#### A. Plaintiff Cannot State a Claim Under Section 36(a)

##### 1. There is No Private Right of Action Under Section 36(a) of the Investment Company Act

Nothing in the text of Section 36(a) authorizes a private right of action. Consequently, plaintiff must argue that an "implied" private right of action exists under Section 36(a). In the past, courts regularly inferred such an implied right on the basis of the statute's legislative history or, alternatively, simply assumed that such a right existed.[20] Recently, however, all of these cases have been rendered antiques from a bygone era of statutory construction. In a string of recent decisions, the Supreme Court as well as the First and Second Circuits have changed the law on implied private causes of action, emphasizing that statutory language and structure *must* be the primary factors in determining whether an implied right of action exists. Since the Supreme Court announced this new doctrinal approach, the one court to reach the issue has held that no implied private right of action exists under Section 36(a). *See Chamberlain v. Aberdeen Asset Mgmt. Ltd.,* No. 02 CV 5870, 2005 WL 195520, at *2-4 (E.D.N.Y. Jan. 21, 2005).

In *Alexander v. Sandoval*, 532 U.S. 275 (2001), the Supreme Court held that a private right of action for an alleged statutory violation only exists if the statute itself creates such a

---

affidavit, failed to allege specific facts showing that Trustees acted in anything other than good faith and in obedience to law); *Jones,* 409 F. Supp. at 373 (rejecting demand futility arguments and noting: "there is nothing averred which would suggest any self-dealing, self-interest, personal gain, or selfish motive on the part of the independent trustees. For all that appears, they are, have been, and will be, faithful to the interests of the Trust. Giving the most liberal interpretation to the complaint, the independent trustees are charged with no more than approval and ratification of transactions proposed (accepting the complaint) by Life. There is no averment that any personal benefit flowed to them"). *Cf. Demoulas v. Demoulas Super Mkts., Inc.*, No. 033741BLS, 2003 WL 22285305, at *9 (Mass. Super. Ct. Sep. 22, 2003) (excusing demand based on nature of prior litigation illustrating that directors clearly acted in self interest, but stating: "[W]ere this Court scrutinizing a *tabula rasa*, it would have considerable difficulty in finding sufficient particularity in the allegations of the amended complaint to get over the pleading bar presented by Rule 23.1. As it said itself in deciding the motion to dismiss in *Harhen*, 'a Court is ill equipped to burst into the boardroom and make decisions as to what actions should be taken in the best interests of the company'").

[20] *See, e.g., McLachlan v. Simon*, 31 F. Supp. 2d 731, 737 (N.D. Cal. 1998); *Young v. Nationwide Life Ins. Co.*, 2 F. Supp. 2d 914, 926 (S.D. Tex. 1998); *Strougo v. Scudder, Stevens & Clark, Inc.*, 964 F. Supp. 785, 798 (S.D.N.Y. 1997); *In re Nuveen Fund Litig.*, No. 94C360, 1996 WL 328006 (N.D. Ill. June 11, 1996). *Fogel v. Chestnutt*, 533 F.2d 731, 745 (2d Cir. 1975) *(Fogel I); Fogel v. Chestnutt,* 668 F.2d 100, 108 (2d Cir. 1981) *(Fogel II).*

remedy. *Id.* at 286. The *Sandoval* Court explained that, as with all instances of statutory construction, "the text and structure of the statute" must indicate a legislative intent to create a private remedy. *Id.* at 286. If the statute reveals no such intent, then courts cannot create a private right of action, "no matter how desirable that [result] might be as a policy matter, or how compatible with the statute." *Id.* at 287. One year after *Sandoval*, the Court reaffirmed the principal that an implied private right of action exists only if the statute itself contains an objective manifestation of congressional intent supporting that result. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002). Only when Congress "speaks in clear and unambiguous terms," concluded the *Gonzaga* Court, can courts imply a private right of action. *Id.* at 290.

The First and Second Circuits have embraced this new approach. In *Bonano v. E. Caribbean Airline Corp.*, 365 F. 3d 81, 86 n.34 (1st Cir. 2004), the First Circuit stated that "the Supreme Court's decision in *Sandoval* changed the legal landscape," adding that "pre-*Sandoval* decision[s]...lack[] continued vitality." Similarly, in *Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429, 432-33 (2d Cir. 2002), the Second Circuit adopted the post-*Sandoval* principles for implying rights of action, stating that a "court must 'begin [its] search for Congress's intent with the text and structure' of the statute, and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided." *Id.* at 432.

A plain reading of Section 36(a) demonstrates immediately that the provision empowers only the Securities and Exchange Commission (SEC) to bring suit, not private plaintiffs. Since *Sandoval*, *Gonzaga*, *Bonano*, and *Olmsted* were decided, several courts have noted that the availability of a private right of action to enforce Section 36(a) has become an open issue.[21] In the one published decision actually ruling on the issue, *Chamberlain*, 2005 WL 195520, at *2-4, the court concluded that private parties cannot sue to enforce claimed violations of Section 36(a).

The *Chamberlain* court, relying heavily on *Olmsted*, held that no private right of action

---

[21] *See Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133, 136 n.4 (2d Cir. 2004) (finding it unnecessary to address existence of private right of action under Section 36(a)); *In re Merrill Lynch Focus Twenty Fund Inv. Co. Act Litig.*, 218 F.R.D. 377, 379-80 (E.D.N.Y. 2003), *aff'd*, 380 F.3d 133 (2d Cir. 2004) (noting that *Sandoval* and *Olmsted* "call for a critical reexamination by lower courts of implied rights of action not supported by either the text of a statute or its legislative history").

can possibly exist under Section 36(a), which provides only for enforcement of the statute by the SEC. *See* 15 U.S.C. § 80a-36(a) ("The Commission is authorized to bring an action...alleging that a person...has engaged...or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct"). The *Chamberlain* court held that there is no private right of action under Section 36(a) because: (1) Section 36(a) does not explicitly provide a right of action; (2) Section 36(a) devotes itself primarily to describing actions that are prohibited," rather than describing the investors the section is intended to protect; (3) Section 36(a) expressly provides for *non*-private enforcement by the SEC, but not private enforcement; and (4) Section 36(a) is a sister statute to Section 36(b), which *does* contain an express private right of action, thereby suggesting that Congress purposefully omitted a private right of action from Section 36(a). *Chamberlain*, 2005 WL 195520, at *2-3.

In the present case, plaintiff will find no succor by citing case law pre-dating *Sandoval*.[22] Pre-*Sandoval* decisions typically rely upon the multi-factor, open-ended balancing test of *Cort v. Ash*, 422 U.S. 66, 78 (1975) to determine whether a statute silent as to a private right of action – including Section 36(a) – nonetheless authorized such a remedy. Whatever the validity of such reasoning prior to *Sandoval*, it is irrelevant now, as the text and structure of Section 36(a) yield a definitive answer as to the existence of a private right of action. *See Chamberlain*, 2005 WL 195520, at *2-3. *See also Bonano*, 365 F. 3d at 86 n.34 ("*Sandoval* changed the legal landscape," resulting in "pre-*Sandoval* decision[s] ... lacking continued vitality"); *Love v. Delta Air Lines*, 310 F.3d 1347, 1358-59 (11th Cir. 2002) (holding that *Sandoval* undermines reasoning of prior cases that found implied rights of action).

---

[22] Pre-*Sandoval* courts finding an implied right of action in Section 36(a) all relied on three basic arguments. First, they noted that courts prior to 1970 generally found an implied private right of action under Section 36, and so Congress ratified that result when it amended that provision in 1970. *See, e.g., Fogel II*, 668 F.2d at 112. Second, they emphasized that the Senate Report to the 1970 amendment stated that "the fact that subsection (b) specifically provides for a private right of action should not be read by implication to affect subsection (a)." *See, e.g., Strougo*, 964 F. Supp. at 797. Finally, and perhaps most frequently, they relied on a House Report for the 1980 Amendments to provisions of the ICA other than Sections 36(a) and (b), which states, *inter alia*, that "it expects courts to imply private rights of action" under Section 36(a), as "such private rights of action will assist in carrying out the remedial purposes of Section 36." *See, e.g., Young v. Nationwide Life Ins. Co.*, 2 F. Supp. 2d 914 , 925 (S.D. Tex. 1998).

## 2.  Plaintiff Cannot Bring a Section 36(a) Claim Based on Excessive Fees

Section 36(a), which forbids violations of fiduciary duties involving "personal misconduct," is not a proper statute upon which to base a claim for excessive fees. Yet, despite the recognized impropriety of asserting an excessive fee claim under Section 36(a), plaintiffs regularly make the attempt to do so because Section 36(b) – which *does* provide a right of action for certain excessive fees – limits damages to those fees incurred in the year before bringing suit. Courts have consistently rejected efforts to end-run Section 36(b)'s cap on damages by asserting a claim under Section 36(a). Indisputably, the *exclusive* remedy under the Investment Company Act for grievances concerning the payment of excessive fees by a mutual fund exists under Section 36(b).[23] Thus, plaintiff's Section 36(a) claim should be dismissed.

## 3.  Plaintiff Pleads No Facts Suggesting Personal Misconduct By the Trustees

Putting aside the impropriety of asserting an excessive fee claim under Section 36(a), as well as plaintiff's lack of standing to do so, plaintiff's Complaint is simply devoid of any allegations suggesting that any defendant engaged in "personal misconduct." In other words, plaintiff's "personal misconduct" claim fails for the same reason that his "demand futility" allegations fail. Namely, the nature of the alleged wrong was the mere continuation of, or "acquiescence or agreement" with, a business decision to continue a distribution agreement. The

---

[23] *See Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 528 F. Supp. 1038, 1067 (S.D.N.Y. 1981), *aff'd*, 694 F.2d 923 (2d Cir. 1982) (stating that "the [Investment Company] Act makes clear that no private remedies other than Section 36(b) seeking restitution of advisory fees shall be implied, brought or maintained and no other relief shall be granted against the recipient of the payments"); *Merine v. Prudential-Bache Util. Fund, Inc.*, 859 F. Supp. 715, 723 (S.D.N.Y. 1994) (stating that allowing plaintiffs to bring excessive fee claims under different provisions of Investment Company Act would render superfluous specific procedural limitations Congress intended in enacting Section 36(b)); *Halligan v. Standard & Poor/Intercapital, Inc.*, 434 F. Supp. 1082, 1084 (E.D.N.Y. 1977) (finding that "36(b) affords a complete remedy for excessive fees paid to investment advisers"); *Cohen v. Fund Asset Mgmt., Inc.*, No. 79 Civ. 2512, 1980 WL 1488, at *3 (S.D.N.Y. Mar. 31, 1980) (refusing to infer cause of action under ICA provision on grounds that "[s]ection 36(b) already provides an express remedy for the recovery of excessive payments"); *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 433 (2d Cir. 2002) (Congress' explicit provision in Section 36(b) of a private right of action "suggests that omission of an explicit private right to enforce other sections was intentional"); *Green*, 19 F. Supp. 2d at 233-34 (ruling that there is no implied right of action under Section 36(a) of ICA when plaintiff's claim falls within ambit of Section 36(b), which expressly provides right of action to redress breaches of fiduciary duty involving compensation or payments to investment adviser); *Tarlov v. Paine Webber Cashfund, Inc.*, 559 F. Supp. 429, 437 (D. Conn. 1983) (holding that plaintiff's attempt to proceed under Section 36(a) of ICA in regards to excessive fees paid to investment adviser was improper attempt to avoid express limitations and intent of Section 36(b)(3)); *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 413 (2d Cir. 1989) (dismissing suit alleging that 12b-1 plan violated Section 12(b) of Investment Company Act and SEC Rule 12b-1 by calculating fees as percentage of asset base because claim was "reincarnation of [plaintiff's] 'excessive fee' argument, and thus … indistinguishable from the Section 36(b) claim, which encompassed the 12b-1 plan").

Complaint sets forth no allegations whatsoever of bias, self-dealing, undue influence, or any other circumstance suggesting that plaintiff's allegations challenge anything other than the mere commercial reasonableness of the distribution fees. *See Olesh v. Dreyfus Corp.*, No. CV-94-1664 (CPS), 1995 WL 500491, at *20 (E.D.N.Y. Aug. 8, 1995) (dismissing plaintiffs' Section 36(a) claim because plaintiffs failed to allege any misconduct by officers of fund manager).

### B.    Plaintiff Cannot State a Section 36(b) Claim Against RS Investments[24]

A Section 36(b) violation occurs only if the fee at issue is *so disproportionately large* that it bears *no reasonable relationship* to the services rendered and could not have been the product of arm's-length bargaining. *Krantz v. Fidelity Mgmt. & Research, Co.,* 98 F. Supp. 2d 150, 158 (D. Mass. 2000). *See also Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923 (2d Cir. 1982). For numerous reasons, plaintiff's Section 36(b) claim fails as a matter of law.[25]

### 1.    The Fund is *Not* Closed to New Investors and, in Any Event, 12b-1 Fees Have *Declined Significantly* Since the So-Called "Closure"

Pleading and proving a violation of Section 36(b) is famously difficult. This difficulty arises to the level of impossibility where a plaintiff alleges a "closed fund/excessive 12b-1 fee" case against a fund that: (a) is not closed to new investors, and (b) has charged successively lower 12b-1 fees every year since the purported closure.

Plaintiff's premises his Section 36(b) claim on a single point: the alleged "closure" of the Fund to all new investors. The Fund has regularly disclosed, however, that new investors are free to purchases shares, provided they do so via a financial institution. *See* Burns Decla, Exh. G, pp. 6-7. Accordingly, plaintiff's Section 36(b) claim fails along with its faulty main premise.

Furthermore, plaintiff pleads the so-called "closure" of the Fund – the central premise of his "excessive fee" theory – in a manner precluding any determination of whether he has stated a Section 36(a) "no reasonable relationship" claim. Plaintiff repeatedly states that "exceptions"

---

[24] With regard to the RS Defendants, plaintiff asserts his Section 36(b) only against RS Investments, the investment adviser to the Fund. Plaintiff does not name any of the Trustees as defendants to the Section 36(b) claim.

[25] Additionally, as PFPC argues in its briefing, to the extent that Section 36(b) applies to 12b-1 fees at all, that is only true where such fees can be characterized as advisory fees which, by their regulatory definition, they are not.

exist to the Fund's closure, yet he fails to plead the nature of these exceptions, other than to state that they are "minor." "Minor," of course, is a conclusion that the Court is not obligated to accept as true and which is meaningless for purposes of inferring whether the "exceptions" impact the reasonableness of the relationship between 12b-1 fees and the costs of providing distribution services to the so-called "closed" fund. Of course, given that any investor – new or existing – can purchase shares in the Fund, the financial institution "exception" entirely swallows the "closed to new investors" rule.

Another fundamental pleading problem plaguing plaintiff's Section 36(b) claim is the absence of allegations regarding whether 12b-1 fees in the Fund increased, decreased, or remained constant after the alleged April 28, 2000 alteration to its investor entrance policy. *See* Complaint ¶ 43. In place of such an allegation, the Complaint merely alleges the lump sum amount of such fees that the Fund paid in the years after April 28, 2000. This information, however, is useless for determining, from the pleadings, whether fees rose or fell after the so-called "closure" and by how much. It is not surprising that plaintiff omits this central allegation, given that 12b-1 fees *decreased significantly* after the Fund modified its investor entrance policy. As discussed above, from 2000 through 2003, 12b-1 fees decreased sequentially in every year: $12,684,558 in 2000; $7,089,119 in 2001; $4,298,785 in 2002; and $3,614,632 in 2003. Furthermore, plaintiff alleges that estimated 12b-1 fees for the year prior to commencement of this action – the only fees potentially recoverable under Section 36(b) – were $3.5 million, yet another decrease. *See* Complaint ¶ 43.

Plaintiff's vague and incomplete manner of pleading the Fund's "closure," the "exceptions" to the "closure," and the actual amount of 12b-1 fees after the "closure" forecloses any possibility that plaintiff can plead a Section 36(b) claim. The 12b-1 fees in the Fund *fell by nearly 75%* from 2000 to 2003, a time during which new investors were *free to invest in the Fund* via a financial institution. These facts do nothing to suggest that the Fund's purported closure made 12b-1 fees disproportionate by any degree, much less "so disproportionately large"

that they bore "no reasonable relationship" to the distribution services provided.[26]

> ## 2. Plaintiff's "Excessive 12b-1 Fee" Allegations Are Deficient Because They Do Not Address the Relationship Between the Fund's 12b-1 Expenses and the Corresponding Distribution Services Rendered

Plaintiff's Section 36(b) claim is wholly unaccompanied by factual allegations addressing the other half of the "no reasonable relationship" equation. Namely, the Complaint is silent regarding the nature and quality of the distribution services that the Fund received in exchange for the 0.25% fee. The extent of plaintiff's pleading on this point consists of the allegation that, since April 28, 2000, RS Investments and PFPC have incurred "minimal" costs in connection with their distribution efforts. *See* Complaint ¶¶ 35, 44. By this allegation, plaintiff presumably intends to suggest that RS Investments and PFPC, in providing the distribution services, have expended an amount of money that is too small to be commercially reasonable.

Although such conclusory pleading might succeed in a case such as *Bjurman*, in which the plaintiff alleged that 12b-1 fees to the investment adviser skyrocketed immediately following the complete closure of the mutual fund to new investors, such pleading cannot succeed in this case. Here, where the Fund remained open to new investors purchasing via financial institutions, plaintiff must allege facts indicating that no reasonable relationship exists "between the fees charged and the services rendered by the investment adviser." *Migdal*, 248 F.3d at 327.

---

[26] Plaintiff no doubt will cite to a recent district court opinion from the Southern District of New York, *Pfeiffer v. Bjurman, Barry & Assocs.*, No. 03 Civ.9741 DLC, 2004 WL 1903075 (S.D.N.Y. Aug. 26, 2004). In *Bjurman*, the mutual fund at issue was closed to all new investors. *Bjurman*, 2004 WL 1903075 at *1. Despite this complete closure, the 12b-1 fees charged to the Fund increased sharply, by 43%. *Id.* at *2-3. A Bjurman fund shareholder immediately asserted a single claim against the fund's investment adviser for violation of Section 36(b). The *Bjurman* plaintiff claimed that it was "inconceivable" that the fund's 12b-1 expenses could increase "so dramatically" immediately after the fund closed to all new investors, and thus the sharp increase "lacked any reasonable relationship to actual expenses incurred for promotion and distribution." *Id.* at *3. Based on these facts, and after stating that it was applying Rule 8's pleading standard more liberally than in other Section 36(b) cases, the *Bjurman* court allowed the Section 36(b) claim to proceed. Putting aside certain potential criticisms of the *Bjurman* opinion, the facts of that case contrast starkly with those of this case. The *Bjurman* court found that a *sharp increase* in 12b-1 fees, immediately following the *complete closure* of the fund, was sufficient under a liberal interpretation of Rule 8 to state a claim under Section 36(b). Here, however, the Fund remains open to any new investor purchasing via a financial institution. Moreover, unlike the steeply rising 12b-1 fees in the *Bjurman* fund, the Fund's 12b-1 fees declined steadily and significantly after the Fund "closed." In sum, the *Bjurman* recipe for pleading a Section 36(b) claim – steeply rising fees in a fund entirely closed to new investors – is absent in the present case. Also noteworthy regarding *Bjurman* is the scope of the plaintiff's claims in that case. The *Bjurman* plaintiff originally filed suit against the trustees of the Bjurman fund and also asserted a state law claim for breach of fiduciary duty against all defendants. However, after a pre-trial conference involving a discussion of "the merits of the allegations in light of industry standards and relevant legal principles," the plaintiff voluntarily dismissed his state law claims and his claims against the trustees. The *Bjurman* plaintiff does not appear to have attempted to assert a Section 36(a) claim against any defendant, and did not attempt to assert any claim against an unaffiliated distributor. *Bjurman*, 2004 WL 1903075, at *3.

Plaintiff's allegation that RS Investments and PFPC incurred "minimal" costs is simply insufficient to implicate the reasonableness of the rapidly declining 12b-1 fees that the Fund paid after altering its investor entrance requirements. Courts routinely dismiss complaints – like plaintiff's – that do not address the relationship between the challenged fee and the actual services rendered in exchange for the fee – the crux of a Section 36(b) claim.[27]

> **3.    The Disinterested Trustees' Pure Business Judgment to Continue the 12b-1 Fees is Fatal to Plaintiff's Section 36(b) Claim**

As noted above, the Complaint contains not a single allegation suggesting that the independent Trustees – Messrs. Auerbach, Contro, and Glynn – made decisions regarding distribution fees with personal interest or with dependence of some kind on the recipients of the fees. This void is fatal to plaintiff's Section 36(b) claim. As numerous courts have recognized, in the absence of an indication that fees bore no reasonable relationship to the services rendered, a court should honor Congress's directive not to "substitute its business judgment for that of a mutual fund's board of directors in the area of management fees." *See Green*, 295 F.3d at 745 (holding that advisory fees were not excessive because disinterested directors approved agreements); *Kalish v. Franklin Advisers, Inc.*, 742 F. Supp. 1222, 1226-27 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 590 (2d Cir. 1991) (same); *Krinsk*, 715 F. Supp. 2d at 485 (same). Plaintiff's Complaint is a paradigmatic example of a challenge focused purely on the independent Trustees' business judgment. In the absence of facts indicating that the independent Trustees exercised something other than pure business judgment in setting 12b-1 fees, the Section 36(b) claim cannot survive.

---

[27] *See, e.g.*, *Krantz v. Prudential Inv. Fund Mgmt., LLC*, 305 F.3d 140, 143 (3d Cir. 2002) (holding that complaint failed to allege facts related to relationship between fees and services "indicating that the fees ... were disproportionate to the services rendered"); *Migdal*, 248 F.3d at 327 ("while plaintiffs have challenged the fees that defendants charged, they have failed to allege sufficient facts about the services that defendants offered in return"); *Strougo*, 964 F. Supp. at 805 (dismissing Section 36(b) claim that lacked allegations concerning nature of services rendered by adviser); *Levy v. Alliance Capital Mgmt., L.P.*, No. 97 Civ. 4672 (DC), 1998 WL 744005, at *2 (S.D.N.Y. Oct. 26, 1998) (dismissing claim because plaintiff did not allege that fees and expenses bore no relationship to services received); *King v. Douglass*, 973 F. Supp. 707, 722-23 (S.D. Tex. 1996) (dismissing claim because plaintiff's allegation of disproportionately large fee was unaccompanied by allegations indicating that fee was unreasonable in light of services provided).

### C.    Plaintiff's Massachusetts State Claim for Breach of Fiduciary Duty Fails as a Matter of Law

### 1.    Plaintiff's Massachusetts State Claim Sounds in Waste and Plaintiff Falls Far Short of Pleading a Waste Claim.

A Section 36(b) claim is essentially a federal counterpart to a common law claim for corporate waste. *See Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 534 (1984) (impetus for Congress's enactment of Section 36(b) was "unduly restrictive" standard of corporate waste applicable to allegations of excessive fees); *Green v. Fund Asset Mgmt.*, 245 F.3d 214, 225 (3d Cir. 2001) (Congress promulgated Section 36(b) because corporate waste standard "previously applied in most states was largely ineffective"); S. REP. NO. 91-184, at 4901 (1970) (stating, in report accompanying bill that became Section 36(b) that, "[u]nder general rules of law," plaintiffs could not successfully challenge advisory contracts save upon a showing of corporate waste). In this case, plaintiff's Massachusetts claim for breach of fiduciary duty arises from the same factual allegations that form the basis of his Section 36(b) claim – i.e., the purported excessiveness of the Fund's 12b-1 fees. Accordingly, plaintiff's state law claim sounds in waste and must be properly pled as such. Numerous courts have recognized that the corporate waste standard, which requires a purportedly excessive fee to "shock the conscience" before liability will arise, is notoriously difficult – if not impossible – to meet.[28] Plaintiff's allegations, which do not even come close to pleading a Section 36(b) claim, fall far short of meeting the waste standard.

### 2.    Plaintiff Fails to Allege Facts Implicating the Duties of Care and Loyalty

As noted above, plaintiff's Massachusetts state claim is properly considered one for

---

[28] *See e.g., Marcus v. Putnam,* 60 F.R.D. 441, 446 (D. Mass. 1973) (noting difficulty of recovering on excessive advisory fee claim under waste standard); *Daily Income Fund,* 464 U.S. at 534 (noting that, under common law standards of corporate waste, allegedly unfair fee will be approved unless shown to be so unreasonable as to shock conscience or be deemed unconscionable); *Acampora v. Birkland,* 220 F. Supp. 527, 548-49 (D. Colo. 1963) (holding that allegedly excessive fees failed to meet applicable waste standard of "unconscionable" or "shocking"); *Saxe v. Brady,* 184 A.2d 602, 610 (Del. Ch. 1962) (ruling that, in action for corporate waste, only determination court need make is whether transaction was so devoid in value that "no person of ordinary, sound business judgment" would have deemed it worthwhile); *Meiselman v. Ebertstadt,* 170 A.2d 720, 723 (Del. Ch. 1961) (holding that absent "shocking disparity" fees paid by mutual fund to investment company for advisory services were not so egregious as to amount to waste); *Lieberman v. Becker,* 155 A.2d 596, 601 (Del. 1959) (articulating corporate waste standard as being applicable when amounts paid are "so large as to be wholly unreasonable").

common law waste.  However, even if construed as a claim for breach of the duty of care or loyalty, plaintiff's Massachusetts claim still fails as a matter of law.

A breach of the duty of loyalty occurs where a fiduciary engages in self-dealing or in transactions involving a *conflict of interest*.  *See e.g., Spiegel v. Beacon Participations, Inc.,* 8 N.E.2d 895, 904 (Mass. 1937); *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198, 214 (D. Mass. 2002), *aff'd*, 316 F.3d 290 (1st Cir. 2003).  Here, the Complaint is devoid of any facts indicating that the defendants engaged in self-dealing or self-interested conduct implicating loyalty concerns.

Regarding the duty of care, Massachusetts courts have consistently affirmed the policy of refraining from interference with the business judgment of corporate fiduciaries, holding that corporate fiduciaries are not liable for allegedly erroneous or bad business judgment.[29] Furthermore, as noted above, business decisions of disinterested directors are *presumptively* made in good faith and are protected from judicial scrutiny in the absence of facts sufficient to rebut the presumption.  *Harhen*, 730 N.E. 2d at 865-66 (affirming presumption that disinterested directors acts in good faith and in best interests of corporation); *Spiegel*, 8 N.E.2d at 904 (holding that "[i]f directors, acting in good faith, nevertheless act imprudently, they cannot ordinarily be held to personal responsibility for loss unless there is 'clear and gross negligence' in their conduct").

Here, plaintiff's Complaint suggests that the Trustees fulfilled their duties of care by convening regularly to exercise their business judgment regarding 12b-1 fees.  *See* Complaint ¶ 41 ("The Trustees specifically voted unanimously to continue the Plan and the Agreement, at least annually since their original approval").  Furthermore, the Complaint contains no facts

---

[29] *See Houle v. Low,* 556 N.E.2d 51, 59 (Mass. 1990) (noting Massachusetts' policy of abstaining from interfering in the business judgments of corporate defendants); *Black v. Parker Mfg. Co.,* 106 N.E.2d 544, 550 (Mass. 1952) (noting that liability for breach of fiduciary duty requires more than lack of good business judgment); *Uccello v. Gold'n Foods, Inc.*, 90 N.E.2d 530, 531 (Mass. 1950) (holding that directors are not liable for errors of judgment or poor business judgments absent showing of "clear and gross negligence"); *Allied Freightways, Inc. v. Cholfin*, 91 N.E.2d 765, 768 (Mass. 1950) (same); *Sagalyn v. Meekins, Packard & Wheat, Inc.,* 195 N.E. 769, 771 (Mass. 1935) (holding that directors "may not be held responsible for mere errors of judgment or want of prudence in the performance of their duties" and that court will not substitute business judgment of directors); *Crowell & Thurlow S. S. Co. v. Crowell,* 182 N.E. 569, 575 (Mass. 1932) (holding that directors are not responsible for mere errors of judgment in the conduct of its business).

suggesting that the Trustees acted in anything but good faith in approving the fees. Accordingly, plaintiff's Massachusetts claim, which is properly considered one for waste, fails to indicate any breach of the duty of care.

### 3.   Putting Aside the Pleading Deficiencies of Plaintiff's Massachusetts State Law Claim, the Claim Should Be Dismissed for Lack of Supplemental Jurisdiction

Even assuming *arguendo* that plaintiff has stated a claim under Massachusetts law, the Court should dismiss the state claim for lack of supplemental jurisdiction. Given that plaintiff fails to state a claim under Sections 36(a) or 36(b), the Court does not have federal question jurisdiction and should dismiss the state claim. Plaintiff cannot maintain diversity jurisdiction over plaintiff's state claims because, for purposes of diversity jurisdiction, a Massachusetts business trust is deemed a citizen of each state in which one of its shareholders is a citizen. *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 292 F.3d 1334, 1339 (11th Cir. 2002). In the absence of complete diversity, the Court cannot exercise diversity jurisdiction pursuant to 28 U.S.C. Section 1332.

## IV.   Plaintiff Does Not Comply with the Verification and Stock Ownership Requirements of Rule 23.1

Federal Rule of Civil Procedure Rule 23.1 requires plaintiff to properly verify his complaint and to allege that he was a shareholder at the time of the transaction of which the plaintiff complains. Rule 23.1's verification and stock ownership requirements are not mere formalities, but are substantive pleading rules designed to prevent strike suits and lawyer-driven litigation.

Although the verification requirement may appear purely technical, it should in no way be taken lightly, as improper verification is grounds for dismissal.[30] A proper verification requires the verifier to read the complaint and to state, on penalty of perjury, that he or she

---

[30] Insufficient verification is grounds for dismissal of a derivative action. *Abeloff v. Barth*, 119 F.R.D. 332, 334 (D. Mass. 1988); *Drepanos v. Malouf*, No. 003921, 2003 WL 21500590, at *5 (Mass. Super. Ct. June 2, 2003) (ruling that failure to verify complaint by oath is by itself sufficient grounds on which to grant summary judgment); *Marcus v. Textile Banking Co.*, 38 F.R.D. 185, 186 (S.D.N.Y. 1965) (holding that failure to verify complaint is "fatal defect"); *Smachlo v. Birkelo*, 576 F. Supp. 1439, 1442 (D. Del. 1983).

knows or believes that the allegations contained therein have a basis in fact.  *Levine v. Prudential Bache Props., Inc.,* 855 F. Supp. 924, 942 (N.D. Ill. 1994); *Brown v. Hart,* 96 F.R.D. 64, 66 (N.D. Ill. 1982) ("[t]he court and defendants are entitled to an assurance that [the] action is a legitimate one rather than a strike suit … [and] [t]herefore, it must be determined whether a responsible investigation was conducted prior to the [litigation]").[31]

In the present case, plaintiff expressly limits the scope of his verification to just one of the 78 paragraphs in the Complaint.  *See* Declaration ¶ 2 (stating that "[t]he allegations in paragraph six…are true and accurate").  Plaintiff fails to attest to the remaining 77 paragraphs as required by FRCP 23.1.  This truncated verification requires dismissal of the Complaint.

Furthermore, Rule 23.1 further requires that the complaint "shall allege … that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law."  FED. R. CIV. P. 23.1.  The purpose of this requirement is to prevent lawyer-driven litigation and figurehead plaintiffs who did not own shares during the relevant events.  *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363, 371 (1966) (policy of Rule 23.1 is to "discourage 'strike suits' by people who might be interested in getting quick dollars by making charges without regard to their truth so as to coerce corporate managers to settle worthless claims in order to get rid of them"); *Rogosin,* 71 F.R.D. at 516 (defendants should not be compelled to defend derivative suit "where the plaintiff is but a puppet for others, neither instigating the action, nor having interest in or awareness of its basis").  Here, plaintiff fails to allege that he owned shares in April 2000 or during any of the purported quarterly reviews that the Trustees were allegedly required to undertake.  The sole reference made to plaintiff's ownership of shares

---

[31] *See also Abrams v. Koether,* 766 F. Supp. 237, 258 (D.N.J. 1991) (affirming that court must be assured that charges have been investigated and found to have substance prior to bringing of derivative suit); *Smachlo,* 576 F. Supp. at 1442-43 (holding that verification "serves the important purpose of ensuring 'that the plaintiff or some other person has investigated the charges and found them to have substance,' and thereby prevent the filing of strike suits"); *Halsted Video Inc. v. Guttillo,* 115 F.R.D. 177, 180 (N.D. Ill. 1987) (ruling that one purpose of verification requirement is to ensure that plaintiff has investigated charges and found them to be substantive); *Brown v. Hart,* 96 F.R.D. 64, 67 (N.D. Ill. 1982) (holding that, before a court can proceed with derivative suit, it must be assured that plaintiff or some other person has conducted responsible investigation, even if personal knowledge of transaction or events is not required); *Rogosin v. Steadman,* 71 F.R.D. 514, 516 (S.D.N.Y. 1976) (stating that it is fundamental to Rule 23.1 that court be assured that some party has "responsibly investigated the allegations at the behest of the named plaintiff, who then stands behind the merits of the complaint").

in the Fund is in paragraph 6 of the Complaint, which states only that plaintiff owned shares as of the commencement of this litigation.  Plaintiff's failure to comply with this statutorily mandated pleading requirement provides an additional ground for dismissal.[32]

## **CONCLUSION**

For the foregoing reasons, the RS Defendants respectfully request that the Court dismiss the Complaint *with prejudice*, given that the Complaint is defective on numerous grounds that are not capable of curative amendment.

Dated:  February 11, 2005                    Respectfully submitted,


/s/ James E. Burns, Jr.
James E. Burns, Jr., *pro hac vice*
Richard Gallagher, *pro hac vice*
Eunice J. Lee, *pro hac vice*
ORRICK, HERRINGTON & SUTCLIFFE, LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2625
Ph:  (415) 773-5700
Fax:  (415) 773-5759
jburns@orrick.com
rgallagher@orrick.com
ejlee@orrick.com

---

[32] Leave to amend the complaint for proper verification may be limited to actions that do not appear to be strike suits.  *Zucker v. Katz*, 708 F. Supp. 525, 534-35 (S.D.N.Y. 1989).