UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
_____

|  |  |  |
|---|---|---|
| ROBERT EMMA, Custodian, IRA, DTD 7/10/97 | ) ) ) | Civil Action No. 04-CV-12106-NMG |
| Plaintiff, | ) ) | Judge Nathaniel M. Gorton |
| v. | ) ) | |
| RS INVESTMENT MANAGEMENT, L.P.; PFPC DISTRIBUTORS, INC.; G. RANDALL HECHT; LEONARD B. AUERBACH; JEROME S. CONTRO; JOHN W. GLYNN JR.; and MICHAEL MCCAFFERY, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| RS EMERGING GROWTH FUND, | ) ) | |
| Nominal Defendant. | ) ) | |

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PFPC DISTRIBUTORS, INC.'S MOTION TO DISMISS PLAINTIFF'S DERIVATIVE COMPLAINT**

Michael K. Fee (BBO # 544541)
Robert G. Jones (BBO # 630767)
Daniel B. Schwarcz (BBO # 657518)
Ropes & Gray LLP
One International Place
Boston, MA 02110
(617) 951-7000

Table of Contents

Page

INTRODUCTION ............................................................................................................1

ALLEGATIONS IN THE COMPLAINT ........................................................................3

ARGUMENT...................................................................................................................5

I.      All of the Plaintiff's Claims are Time-Barred. ......................................................5

II.     Plaintiff's Failure to make a Pre-Suit Demand on the Fund's Board of Trustees
        Compels Dismissal of his Section 36(a) Claim and his State Law Fiduciary Duty
        Claim. ....................................................................................................................6

III.    There is no Private Right of Action under Section 36(a) of the Investment
        Company Act. ........................................................................................................8

IV.     Payments by the Fund to PFPC in Exchange for Distribution Services – *not*
        Investment Advisory Services – do not Implicate Section 36(b). ..........................8

        A.      Section 36(b) only provides a cause of action to challenge payments that
                are made for investment advisory services. ..................................................9

        B.      The plaintiff's Section 36(b) claim must be dismissed because the 12b-1
                fees that the Fund paid to PFPC were not compensation for investment
                advisory services. ......................................................................................11

V.      The Plaintiff's State Law Claim must be Dismissed for Lack of Supplemental
        Jurisdiction. ..........................................................................................................13

VI.     PFPC does not Owe any Fiduciary Duties to the Fund under Massachusetts State
        Law.......................................................................................................................13

CONCLUSION..............................................................................................................16

<u>Table of Authorities</u>

<u>Page</u>

**FEDERAL CASES**

*Jerozal v. Cash Reserve Mgm't, Inc.,*
No. 81 Civ. 1569, 1982 U.S. Dist. LEXIS 16566
(S.D.N.Y. Aug 10, 1982) ............................................................................................9, 10, 11, 12

*Clorox Co. Puerto Rico v. Proctor & Gamble,*
228 F.3d 24 (1st Cir. 2000)............................................................................................3

*Daily Income Fund, Inc. v. Fox,*
464 U.S. 523 (1984) ......................................................................................................11

*Green v. Nuveen,*
186 F.R.D. 486 (N.D. Ill. 1999) ..................................................................................9, 10

*Levy v. Alliance Cap. Mgm't,*
No. 97 Civ. 4672, 1998 U.S. Dist. LEXIS 16749 (S.D.N.Y. Oct. 26, 1998) ............9, 10

*Grossman v. Johnson,*
674 F.2d 115 (1st Cir. 1982)........................................................................................6, 7

*Halligan v. Standard & Poor's/ Intercapital, Inc.,*
434 F.Supp. 1082 (E.D.N.Y. 1977) .............................................................................9, 10

*Industrial Gen. Corp. v. Sequoia Pacific Sys. Corp.,*
44 F.3d 40 (1st Cir. 1995)............................................................................................14, 15

*KBQ, Inc. v. E.I. Du Pont,*
6 F.Supp.2d 94 (D.Mass. 1998) ..................................................................................14

*In re Kauffman Mut. Fund Actions,*
479 F.2d 257 (1st Cir. 1973)........................................................................................6

*Meyer v. Oppenheimer,*
764 F.2d 76 (2d Cir. 1985)..........................................................................................12, 13

*Meyer v. Oppenheimer,*
895 F.2d 861 (2d Cir. 1990)........................................................................................13

*Rohrbaugh v. Investment Company Institute,*
No. 00-1237, 2002 U.S.Dist. LEXIS 13401 (D.D.C. July 2, 2002) ............................9

Table of Authorities

Page

*Shaw v. Digital Equipment Corp.*,
82 F.3d 1194 (1st Cir. 1996) ......................................................................................5

*In Re TCW /DW N. America Gov. Income Trust Sec. Lit.*,
941 F.Supp. 326 (S.D.N.Y. 1996) ..........................................................9, 11, 12, 13

*The Dartmouth Review v. Dartmouth College*,
889 F.2d 13 (1st Cir. 1989) .......................................................................................5

*Watterson v. Page*,
987 F.2d 1 (1st Cir. 1993) ..........................................................................................3

**STATE CASES**

*Broomfield v. Kosow*, 349 Mass. 749 (1965) ...............................................................15

*Grimes v. Donald*, 673 A.2d 1207 (Del. 1996) .............................................................6

*Harhen v. Brown*, 431 Mass. 838 (2000) ..............................................................6, 7, 8

*Patsos v. First Albany Corp.*, 433 Mass. 323 (2001) ..................................................15

*Superior Glass Co. v. First Bristol County National Bank*, 380 Mass. 829 (1980) ...............14, 15

*Warsofsky v. Sherman*, 326 Mass. 290 (1950) ............................................................15

**STATUTES**

15 U.S.C. § 80a-2 ..........................................................................................................3, 7

Fed. R. Civ. P. 11 ............................................................................................................11

Fed. R. Civ. P. 12(b)(6) ....................................................................................................5

15 U.S.C. § 80a-1, *et. seq.*, ...............................................................................................1

17 C.F.R. § 270.12b-1 .......................................................................................................4

15 U.S.C. § 80a-35 ...................................................................................................8, 9, 10

Fed. R. Civ. P. 23.1 ............................................................................................................7

Senate Report No. 91-184 (1969), 1970 USSCAN 4897, 4902 ....................................11

Table of Authorities

Page

Mass G.L. c. 156D, § 7.42 ..........................................................................................2, 6

Mass. G.L. c. 182, § 2B .................................................................................................7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
_____

|  |  |  |
|---|---|---|
| ROBERT EMMA, Custodian, IRA, DTD 7/10/97 | ) ) ) | Civil Action No. 04-CV-12106-NMG |
| Plaintiff, | ) ) | Judge Nathaniel M. Gorton |
| v. | ) ) | |
| RS INVESTMENT MANAGEMENT, L.P.; PFPC DISTRIBUTORS, INC.; G. RANDALL HECHT; LEONARD B. AUERBACH; JEROME S. CONTRO; JOHN W. GLYNN JR.; and MICHAEL MCCAFFERY, | ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| RS EMERGING GROWTH FUND, | ) ) | |
| Nominal Defendant. | ) ) | |

_____

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PFPC DISTRIBUTORS, INC.'S MOTION TO DISMISS PLAINTIFF'S DERIVATIVE COMPLAINT

Defendant PFPC Distributors, Inc. ("PFPC") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the derivative complaint of plaintiff Robert Emma (the "Complaint").

### INTRODUCTION

In this action, plaintiff asserts that the distribution fees that the RS Emerging Growth Fund (the "Fund") has paid since April 28, 2000 pursuant to a distribution plan specifically authorized by the Investment Company Act, 15 U.S.C. § 80a-1, *et. seq.* ("ICA"), and adopted in accordance with rules promulgated thereunder, were nevertheless excessive. He basis this claim on his assertion that, after April 28, 2000, the Fund was "closed" to certain new investors. Two of the three claims asserted in the Complaint – Count II for a violation of § 36(a) of the ICA and

Count III for a breach of fiduciary duties under Massachusetts law – are derivative in nature, and required plaintiff to make a pre-suit demand on the Fund's Board of Trustees before proceeding on the Fund's behalf.  This is especially true since the Complaint was filed after the effective date of a Massachusetts statute making pre-suit demand mandatory in derivative actions.  Mass G.L. c. 156D, § 7.42.

Plaintiff's failure to make such a demand is sufficient by itself to compel dismissal of his two derivative claims.  But even if plaintiff were permitted to plead demand futility, the Complaint's allegations, which in no way suggest that the Trustees were interested with regard to PFPC, would still be inadequate.  Moreover, the claims themselves in Counts II and III are also defective:  Count II should be dismissed because there is no private right of action under § 36(a) of the ICA, and Count III should be dismissed because PFPC's obligation to serve as the Fund's principal underwriter and distributor arises out of its distribution agreement with the Fund and is therefore governed not by fiduciary principles, but by contractual ones.

Count I of the Complaint alleges that the Fund's 12b-1 distribution fees were excessive under § 36(b) of the ICA.  But § 36(b) does not concern itself with the payment of fees for distribution services; as explained below, that section is addressed only to claims relating to allegedly excessive *investment advisory fees*.  Moreover, there is no basis for extending a claim under § 36(b) to any amounts paid to PFPC, since PFPC is not affiliated with the Fund's investment adviser and any distribution fees PFPC retains do not accrue to the benefit of the investment adviser.

For all of these reasons, as set forth more fully below, the Court should dismiss the Complaint in its entirety.

## ALLEGATIONS IN THE COMPLAINT

The Fund is one of a series of mutual funds organized under the RS Investment Trust (the "Trust"), a Massachusetts business trust. *Compl.* ¶ 19. Defendant RS Investment Management, L.P. ("RSIM") is the Fund's investment adviser. *Compl.* ¶ 21. In that capacity, RSIM advises the Fund on its investment decisions and provides the Fund with other investment services, such as managing shareholder accounts.

The Fund's *distributor* (and principal underwriter) is PFPC. *Compl.* ¶ 22. PFPC is a Massachusetts corporation and a wholly-owned indirect subsidiary of PNC Financial Services Group, Inc. (formerly PNC Bank Corp.). It is not "affiliated" with RSIM or the Trust, as that term is defined in the ICA. *See* 15 U.S.C. § 80a-2 (defining an "affiliated person" as a person who has either common ownership or control of 5 percent of the outstanding voting securities of the other person or some other form of direct or indirect control). Under the terms of a Distribution Agreement between PFPC and the Trust, PFPC serves as the distributor for each of the Trust's other funds as well. *Compl.* ¶ 38; *see also* Exhibit A to Declaration of Robert G. Jones, Esq. ("Jones Decl.").[1] The Distribution Agreement obligates PFPC to provide, *inter alia*, "[g]eneral sales and distribution services in respect of the shares of the Fund[], including without limitation reviewing advertising and sales literature and filing such advertising and sales literature with appropriate regulatory authorities, preparing reports to the officers and Trustees of

---

[1] On this Motion to Dismiss, the Court can consider documents relied upon in the Complaint, including the Distribution Agreement. *See Clorox Co. Puerto Rico v. Proctor & Gamble*, 228 F.3d 24, 32 (1st Cir. 2000) (documentation that is "integral to or explicitly relied upon in the complaint, even though not attached to the complaint" may be properly considered by a court ruling on a 12b(6) motion without converting the motion into one for summary judgment). Of course, the Court may also consider documents filed publicly with the SEC in connection with a motion to dismiss, and the Distribution Agreement is so filed. *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993) (although "[o]rdinarily . . . any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden . . . courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties [such as] official public records").

the Trust in respect of the distribution of the Fund's shares, [and] performing internal audit examinations related to the distribution functions performed by PFPC."  Exhibit A to Jones Decl. at p. 2.

In order to compensate PFPC for these services, as well as to pay other distribution-related expenses, the Fund's Trustees have adopted a plan pursuant to Rule 12b-1, 17 C.F.R. § 270.12b-1, which the S.E.C. promulgated under the ICA.  Rule 12b-1 requires that a fund's payment of any expenses relating to the distribution of its shares be made in accordance with a detailed plan that is approved, and periodically re-assessed, by a majority of the fund's trustees as well as a majority of its non-interested trustees.  All expenses for promoting or advertising the fund, including printing and mailing prospectuses and other sales literature, and all compensation of distributors, underwriters, broker-dealers and other sales personnel, are covered by the Rule. *Compl.* ¶ 31.

Under its 12b-1 plan, the Fund pays certain distribution-related fees ("12b-1 fees") equal to 0.25% of its average net asset value.  PFPC receives its fee for serving as the Fund's distributor from this amount.  On April 28, 2000, the Fund closed to certain investors.  *Compl.* ¶ 28.  Since that time, the Fund's Trustees, including its non-interested Trustees, have unanimously agreed on numerous occasions to renew both the Fund's 12b-1 plan and its Distribution Agreement with PFPC.  *Compl.* ¶ 41.  Each time the Trustees reached this determination, they did so only after reviewing quarterly written reports detailing the amounts paid to PFPC and the services that PFPC provides to the Fund in exchange for these payments. *Compl.* ¶ 42.

Despite the consistent, unanimous view of both the Fund's interested and non-interested Trustees, the Complaint claims that the 12b-1 fees charged to the Fund's shareholders since

April 28, 2000 have been "excessive, because those payments materially exceeded the expenses incurred by" RSIM and PFPC during that period. *Compl.* ¶ 44. The Complaint hypothesizes that once the Fund closed to certain investors, the expenses associated with distribution "have been and will continue to be minimal." *Compl.* ¶ 35. Based on this theory, the Complaint asserts three claims against RSIM and PFPC: (i) an alleged violation of § 36(b) of the ICA, (ii) an alleged violation of § 36(a) of the ICA, and (iii) an alleged breach of fiduciary duty under Massachusetts law. It also asserts that the Trustees violated § 36(a) of the ICA and their fiduciary duties under Massachusetts law.

## ARGUMENT

Dismissal is warranted at the outset of an action where the well-pleaded allegations of the complaint fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *The Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989). While the Court, in deciding a motion to dismiss under Rule 12(b)(6), must take all well-pleaded facts as true, it need not credit "'bald assertions' or legal conclusions." *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1216 (1st Cir. 1996).

For the convenience of the Court, in those several instances where the arguments of defendants RSIM and the Trustees (the RS Defendants) and PFPC are substantially the same, PFPC has adopted by reference the RS Defendants' arguments.

**I.    All of the Plaintiff's Claims are Time-Barred.**

For the convenience of the Court, PFPC hereby incorporates by reference and adopts the RS Defendants' argument that the claims asserted in the Complaint are barred by the applicable statutes of limitation. *See* Memorandum of Law In Support of RS Defendants' Motion to Dismiss ("RS Defendants' Memorandum") at pp. 2-7.

II.     **Plaintiff's Failure to make a Pre-Suit Demand on the Fund's Board of Trustees Compels Dismissal of his Section 36(a) Claim and his State Law Fiduciary Duty Claim.**

For the convenience of the Court, PFPC hereby incorporates by reference and adopts the RS Defendants' argument that the plaintiff's failure to make a demand on the Fund's Trustees is fatal to his claims under § 36(a) of the ICA and Massachusetts state law, inasmuch as Massachusetts' universal demand requirement, Mass. G.L. c. 156D, § 7.42, applies to derivative suits involving business trusts.  *See* RS Defendants' Memorandum at pp. 9-10.

Even assuming that demand could in certain instances be excused under Massachusetts law, the plaintiff's explanation for his failure to make a demand would nevertheless be inadequate as a matter of law.  *See* RS Defendants' Memorandum at pp 10-17.  The only justification that the plaintiff offers for his failure to make a demand is that the Fund's Trustees approved the 12b-1 plan after April 28, 2000 and subsequently decided not to terminate it on several occasions.  *See Compl.* ¶¶ 61-66.  But the "mere 'participation' or 'acquiescence' by the directors in the level of the challenged advisory fees . . . is an insufficient excuse where the corporate activity is the normal one of setting and paying advisory fees." *Grossman v. Johnson*, 674 F.2d 115, 124 (1st Cir. 1982).  "Bare allegations of 'wrongful participation' or 'acquiescence' are not enough in [the First] circuit." *Id*.; *In re Kauffman Mut. Fund Actions*, 479 F.2d 257, 264-66 (1st Cir. 1973).  Were this not the case, a shareholder could bring a derivative suit without making a demand on the trustees whenever the board had previously reached a contrary conclusion.  *See Grimes v. Donald*, 673 A.2d 1207, 1216 n.8 (Del. 1996).  Such a result would do violence to Massachusetts' "basic principle of corporate governance [that] the board of directors or majority shareholders should set the corporation's business policy, including the decision whether to pursue a lawsuit." *Harhen v. Brown*, 431 Mass. 838, 844 (2000).

However, *even if* Massachusetts did not universally require demand on a fund's trustees *and* the Trustees' earlier approval of the 12b-1 plan were not irrelevant as a matter of law, the plaintiff would still have failed to allege "with particularity" that a demand on the Trustees to bring suit *against PFPC* would have been futile. *See* Fed. R. Civ. P. 23.1 (requiring that pleading of futility be set forth "with particularity"); *Grossman,* 674 F.2d at 123-24 (noting that the First Circuit "vigorously enforce[s]" the requirement that plaintiffs allege with particularity the futility of making a demand on the directors). Under Massachusetts law, in order to overcome a failure to make a demand on a fund's trustees, a plaintiff must demonstrate that a majority of those trustees were interested. *See Harhen*, 431 Mass. at 842 (demand can only be excused if the directors are alleged to be interested, as it "is presumed that a disinterested board of directors acts in good faith towards all [the corporation's] members, and . . . directors as a matter of business policy[] may refuse to bring a suit"). Massachusetts has explicitly adopted the ICA's definition of "interested persons," Mass. G.L. c. 182, § 2B, which provides that a trustee is "interested" with respect to a principal underwriter if the trustee is an "affiliate" of the underwriter or is otherwise controlled by the underwriter, *see* 15 U.S.C. § 80a-2(a)(19)(B).

The Complaint's skeletal allegations concerning demand futility do nothing to establish that any of the Trustees, much less a majority of them, were "interested" with respect to PFPC, and certainly do not state such a claim with the requisite particularity. Nowhere does the Complaint assert that that any members the Fund's Board were "affiliated" with PFPC or otherwise controlled by PFPC. There is no allegation, for instance, that members of the Fund's Board are actually PFPC representatives or hold substantial amounts of stock in PFPC or its parent company. In such circumstances, it must be presumed that if the Trustees had reason to believe that suing PFPC would have been in the Fund's best interest, they would have done so.

*See Harhen*, 431 Mass. at 844 ("[A] disinterested board of directors that has refused a plaintiff's pre-suit demand is entitled to the protection of the business judgment rule."). The absence of even a single allegation in the Complaint that would support an argument that the Trustees were not disinterested with respect to PFPC only serves to underscore the plaintiff's wholesale failure to meet his burden of pleading demand futility "with particularity" as to PFPC. This failure alone provides an independent ground for dismissal of plaintiff's § 36(a) and Massachusetts state law claims against PFPC.

**III.     There is no Private Right of Action Under Section 36(a) of the Investment Company Act.**

Separate and apart from his failure to make a demand and to plead futility of demand, plaintiff's purported claim under § 36(a) of the ICA also must fail because there is no private right of action to sue for violations under that section of the statute. For the convenience of the Court, PFPC hereby incorporates by reference and adopts the arguments set forth on behalf of the RS Defendants in this regard. *See* RS Defendants' Memorandum at pp. 17-20.

**IV.     Payments by the Fund to PFPC in Exchange for Distribution Services – *not* Investment Advisory Services – do not Implicate Section 36(b).**

Count I of the Complaint purports to state a claim against PFPC pursuant to § 36(b) of the ICA, 15 U.S.C. § 80a-35(b). But the private right of action in § 36(b) is narrowly limited to claims involving investment advisory fees. It does not provide a basis for the plaintiff to assert that the *distribution fees* paid to PFPC, the Fund's distributor, were excessive.[2] The allegations in the Complaint make clear that these distribution fees, which the Fund pays pursuant to its duly

---

[2] Even if PFPC were a proper defendant to a claim pursuant to § 36(b) of the ICA, the Complaint fails to allege facts sufficient to state a claim against any defendant for a violation of that section. For the convenience of the Court, PFPC hereby incorporates by reference and adopts the arguments set forth on behalf of the RS Defendants in this regard. *See* RS Defendants' Memorandum at pp 21-24.

approved 12b-1 plan and Distribution Agreement, have nothing to do with investment advisory

services.  For this reason, the § 36(b) claim against PFPC should be dismissed.

> **A.      Section 36(b) only provides a cause of action to challenge payments that are made for investment advisory services.**

Courts analyzing claims under § 36(b) have consistently found that the provision's right

of action "is limited by its language and its intent to recovery of investment advisory fees."  *In*

*Re TCW /DW N. Am. Gov. Income Trust Sec. Lit*., 941 F.Supp. 326, 343 (S.D.N.Y. 1996); *see*

*Rohrbaugh v. Investment Company Institute*, No. 00-1237, 2002 U.S. Dist. LEXIS 13401, at

*31-32 (D.D.C. July 2, 2002); *Green v. Nuveen*, 186 F.R.D. 486, 492 (N.D. Ill. 1999); *Levy v.*

*Alliance Cap. Mgm't*, No. 97 Civ. 4672, 1998 U.S. Dist. LEXIS 16749, at *11 (S.D.N.Y. Oct.

26, 1998); *Jerozal v. Cash Reserve Mgm't, Inc*., No. 81 Civ. 1569, 1982 U.S. Dist. LEXIS

16566, at *5 (S.D.N.Y. Aug. 10, 1982); *Halligan v. Standard & Poor's/ Intercapital, Inc*., 434

F.Supp. 1082, 1085 (E.D.N.Y. 1977).  A fund's payment to entities other than its investment

adviser (or the adviser's affiliates) for services other than investment advice is therefore not

actionable under § 36(b).  *See In Re TCW*, 941 F.Supp. at 343; *Jerozal*, 1982 U.S. Dist. LEXIS

16566, at *5.

To be sure, § 36(b) authorizes plaintiffs to bring suit against several defendants who are

not themselves investment advisers or "affiliated persons" of those advisers.  But while the

additional potential defendants referenced in § 36(b) include the fund's directors, officers, and,

of particular relevance to this case, its principal underwriter, *id*. § 80a-35(a), the language of the

section is equally clear that these parties may only be defendants if they have "a fiduciary duty

concerning" the payment of investment advisory fees.  *See id*.  As such, § 36(b) "must be

'narrowly read to mean that *only those who receive money paid by the investment company for*

*investment advisory services* may be held liable for breach of their fiduciary duty with respect to

such payments.'" *Levy*, 1998 U.S. Dist. LEXIS 16749, at *11 (emphasis added) (quoting *Halligan*, 434 F.Supp. at 1085); *Green*, 186 F.R.D. at 492 (§ 36(b) claims against a fund's directors must be dismissed because complaint did not allege that those directors received compensation for investment advisory services, even though they did receive other payments); *In Re TCW*, 941 F.Supp. at 343 ("[T]he right of action under section 36(b) *is limited by its language and its intent to recovery of investment advisory fees* from any party enumerated in either section 36(b) or section 36(a)."(emphasis added)).  The statute's allowance of a suit against § 36(a) defendants such as a principal underwriter is therefore merely designed to "aid[] the enforcement of an investment adviser's fiduciary duties by tracing compensation or payment for advisory services to the ultimate beneficiary." *Jerozal*, 1982 U.S. Dist. LEXIS 16566, at *5.

The highly limited scope of § 36(b)'s private right of action against § 36(a) defendants such as the principal underwriter is supported not only by applicable precedent, but also by the provision's language and structure.  The first sentence of the provision,[3] which establishes the substantive scope of the investment adviser's fiduciary duty to the fund, makes no mention of anyone other than investment adviser or its affiliates.  Only in the second sentence of § 36(b),

---

[3] The full text of the section is:

> [1]  For purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser.  [2]  An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person. . . .

15 U.S.C. § 80a-35(b).

which establishes the enforcement mechanism for violations of the first sentence, does the text refer to defendants such as the principal underwriter. This statutory design strongly suggests that the provision allows suit against defendants such as an unaffiliated principal underwriter only insofar as doing so is necessary to enforce the fiduciary duty of the investment adviser regarding claims of excessive investment advisory fees. Moreover, understanding this structure illuminates the statute's explicit limitation of suits against subsection (a) defendants to alleged violations "of fiduciary duty in respect of such *compensation or payments*" – the "such" reference is clearly to the first sentence's elaboration of a fiduciary duty for "receipt of *compensation* for services, or of *payments* of a material nature . . . to such investment adviser or any affiliated person of such investment adviser." (emphasis added). As one court succinctly observed, "[t]he language of section 36(b) focuses solely on the fiduciary duties of investment advisers." *Jerozal*, 1982 U.S. Dist. LEXIS 16566, at *5; *see also In Re TCW*, 941 F.Supp. at 343 ("[W]hen § 36(b) details a fiduciary duty with respect to 'compensation for services,' the services referred to are investment adviser services.").[4]

**B.    The plaintiff's Section 36(b) claim must be dismissed because the 12b-1 fees that the Fund paid to PFPC were not compensation for investment advisory services.**

Here, there is no dispute that PFPC serves as the Fund's distributor, not its investment adviser, and that the 12b-1 fees that it receives under the Distribution Agreement are not compensation for investment advisory services. *Compl.* ¶¶ 22, 36-43. As a result, there is no allegation – nor could there be, consistent with Fed. R. Civ. P. 11 – that PFPC received

---

[4] The limited scope of the §36(b) right of action stems from the provision's basic purpose. Congress enacted § 36(b) after determining that "a mutual fund cannot, as a practical matter sever its relationship with the adviser" that organizes its formation and subsequently manages its day-to-day operations. Senate Report no. 91-184, at 6 (1969), 1970 USSCAN 4897, 4902. The relationship between mutual funds and their investment advisers, Congress believed, is therefore not subject to the "forces of arm's-length bargaining" that govern most sectors of the American economy. *See id.*; *see generally Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 536-40 (1984).

"investment advisory fees" from the Fund.  In the absence of any such allegation, plaintiff has no cognizable claim against PFPC under § 36(b).  For this reason, Count I of the Complaint should be dismissed as to PFPC.

At least two cases have specifically rejected claims, like the one asserted against PFPC here, seeking to impose liability on distributors that did not receive compensation in return for investment advisory services.  In the first of these cases, *Jerozal v. Cash Reserve Management, Inc., supra*, the plaintiff claimed under § 36(b) that the fund in which he owned shares paid excessive fees to its adviser, Morgan Guaranty Trust Co., and its distributor, E.F. Hutton & Co. 1982 U.S. Dist. LEXIS 16566, at *16.  The court dismissed the § 36(b) claim against the distributor, holding that the complaint did not allege that Hutton had "received any portion of the advisory fees or payments of a material nature made to the investment adviser."  *Id*. at *19.  In doing so, the court explained that "the numerous parties [potentially] subject to liability under section 36(b) are only liable for receipt of compensation or payments for investment advisory services."  *Id*. at *18.

Similarly, in *In Re TCW/DW N. Am. Gov. Income Trust Sec. Lit*., *supra*, stockholders in an open-end mutual fund alleged that both the fund's principal underwriter in connection with its IPO and the fund's manager since the IPO charged the fund excessive fees in violation of § 36(b).  941 F.Supp. at 334-35.  On a motion to reconsider its earlier holding, the district court granted the two defendants' motions to dismiss, concluding that "the right of action under section 36(b) is limited by its language and its intent to recovery of investment advisory fees from any party enumerated in either section 36(b) or section 36(a)."  *Id*. at 343.  The plaintiffs, concluded the court, did not plead facts sufficient to show that these defendants had received such fees, as the complaint alleged only that the two defendants had been compensated for managing and

distributing the fund's shares but not that they "ever received compensation for investment advisory services." *Id.*[5]

The Complaint makes clear that the 12b-1 fees that the Fund paid to PFPC had nothing to do with investment advice. PFPC has never provided any such advice to the Fund, and it is not affiliated with RSIM, the Fund's investment adviser. In such circumstances, both precedent and the plain language of § 36(b) require dismissal of Count I of the Complaint as to PFPC.

**V.    The Plaintiff's State Law Claim must be Dismissed for Lack of Supplemental Jurisdiction.**

For the convenience of the Court, PFPC hereby incorporates by reference and adopts the RS Defendants' argument that the Massachusetts fiduciary duty claims asserted in the Complaint should be dismissed for lack of supplemental jurisdiction. *See* RS Defendants' Memorandum at p. 27.

**VI.    PFPC does not Owe any Fiduciary Duties to the Fund under Massachusetts State Law.**

If the Court does reach the Massachusetts state law claim alleged in Count III of the Complaint, then it should dismiss that claim as to PFPC. Count III alleges that PFPC violated its

---

[5] *In re TCW* is not inconsistent with *Meyer v. Oppenheimer*, 764 F.2d 76 (2d Cir. 1985). The *Oppenheimer* court permitted a shareholder to bring suit under § 36(b) to recover 12b-1 fees paid to five distributors. Although none of the distributors was itself the fund's investment adviser, the court held that all of them were "affiliated persons" of the adviser because they collectively owned 100% of its stock. *See id.* at 79, 82. As such, the court concluded that the 12b-1 fees that were paid to them, while ostensibly for distribution expenses, nonetheless could be challenged under § 36(b). *See id.* at 82. As the Second Circuit noted in a later proceeding in the same case, "[w]ere such review not available investment advisers might be able to extract additional compensation for advisory services by excessive distributions under a 12b-1 plan." *Meyer v. Oppenheimer,* 895 F.2d 861, 866 (2d Cir. 1990). In contrast to *Oppenheimer*, there were no allegations in the *TCW* case that the distributor ever received payments for advisory services.

In any event, the holding in *Oppenheimer* is entirely consistent with the conclusion that the § 36(b) claim against PFPC must be dismissed in this case. Unlike in *Oppenheimer,* there is no allegation here that PFPC is an "affiliated person" of RSIM under the ICA, nor could there be consistent with Rule 11. Given this fact, it is hardly surprising that there is also no claim that the 12b-1 fees that the plaintiff seeks to recover from PFPC were actually in return for investment advisory services.

fiduciary duty to the Fund under Massachusetts law. However, PFPC does not owe any fiduciary obligations to the Fund under state law. PFPC's obligations to the Fund, and vice versa, are solely contractual.

Although Massachusetts courts have recognized that various business relationships – such as those between a trustee and beneficiary, director and corporation, and employer and employee – involve extra-contractual fiduciary obligations, *see Warsofsky v. Sherman*, 326 Mass. 290, 292 (1950), no court has concluded that a distributor owes such fiduciary duties to an unaffiliated fund under Massachusetts law. To be sure, the lack of such a holding is not dispositive: Massachusetts courts have reasoned that the "circumstances which may create a fiduciary relationship are [too] varied" to warrant enumerating an exclusive list of fiduciary relationships. *Id.* But it does mean that in order for Count III of the Complaint to survive dismissal, the plaintiff must allege facts indicating that the relationship between PFPC and the Fund meet the basic criteria for fiduciary relationships under Massachusetts law. *See id.*

The general rule in Massachusetts is that "business transactions that are conducted at arm's length do not give rise to fiduciary relationships." *Industrial Gen. Corp. v. Sequoia Pacific Sys. Corp.*, 44 F.3d 40, 44 (1st Cir. 1995). Courts applying Massachusetts law have thus consistently refused to impose fiduciary duties on unrelated commercial actors whose relationship is governed by contract. *See id.; KBQ, Inc. v. E.I. Du Pont*, 6 F. Supp. 2d 94, 100 (D.Mass. 1998); *Superior Glass Co. v. First Bristol County Nat'l Bank*, 380 Mass. 829, 832 (1980). The holding in *KBQ, Inc. v. E.I. Du Pont, supra*, clearly illustrates the point. The plaintiff in that case, an authorized distributor for DuPont, alleged that DuPont violated its fiduciary duties to it by terminating the parties' distribution agreement. 6 F. Supp. 2d at 100. Focusing on the fact that DuPont and its distributor were independent corporate entities that

exercised only minimal control over each other, the court concluded that the mere existence of a contract between them did not establish a fiduciary relationship.  *See id.*

Where the parties to a business transaction do not deal at arm's length, Massachusetts courts have recognized that the relationship between them may implicate fiduciary obligations. For this to occur, there must be a significant disparity of power between the parties.  *See Sequoia Pacific*, 44 F.3d at 44; *Broomfield v. Kosow*, 349 Mass. 749, 755-56 (1965).  Such a disparity can stem from a differential in the parties' relative levels of sophistication and knowledge or from the existence of a special relationship of trust.  *See Patsos v. First Albany Corp.*, 433 Mass. 323, 333-35 (2001).  Standing alone, however, a differential in power between the parties is not sufficient to create fiduciary duties under Massachusetts law.  The weaker party must also place trust in the stronger party – often through granting that party a significant amount of discretion – and the stronger party must accept this reliance.  *See Sequoia Pacific*, 44 F.3d at 44; *KBQ, Inc.*, 6 F. Supp. 2d at 100; *Superior Glass Co.*, 380 Mass. at 832.

The Complaint does not allege any facts that would undermine the presumption under Massachusetts law that the business relationship between PFPC and the Fund did not create fiduciary obligations.  The Distribution Agreement was negotiated on the Fund's behalf by the Trust, a sophisticated commercial actor.  Moreover, the Complaint does not allege any special relationship of trust between the Fund and PFPC, and public filings make clear that the two are distinct corporate entities without any significant overlap in ownership or control.  Additionally, the scope of PFPC's discretion to act on behalf of the Fund is narrowly circumscribed by the Distribution Agreement.  *See* Exhibit A to Jones Decl. at p. 2.  In these circumstances, the allegations in the Complaint are insufficient as a matter of law to state a claim against PFPC for a violation of Massachusetts fiduciary duties.

**CONCLUSION**

For the reasons set forth above this action should be dismissed.

PFPC DISTRIBUTORS, INC.,

By their attorneys,

/s/ Robert G. Jones_____
Michael K. Fee (BBO # 544541)
Robert G. Jones (BBO # 630767)
Daniel B. Schwarcz (BBO # 657518)
Ropes & Gray
One International Place
Boston, MA 02110
(617) 951-7000

Dated:  February 11, 2005

16